STODDART, for the use of his Assignees, *against* ALLEN and another, Assignees of MOORE, MYERS, and Co.

If an assignment be made for the benefit of such creditors as shall execute a release within a given time, one to whom a debt is actually due, and who releases within the time, but afterwards takes up notes drawn and endorsed by him for the accommodation of the assignor, is not entitled to a dividend of his estate upon the notes thus taken up.

CASE for the opinion of the court, as follows:—

" *John Stoddart,* and *Moore, Myers,* and Co., were merchants, and had considerable dealings together, in the course of which, they lent and endorsed notes for each other, to a large amount.

" On the 21st *February,* 1820, *John Stoddart* made a general assignment to *Thomas Fletcher,* for the benefit of his creditors; and on the 25th of the same month, he executed another assignment of the same nature to the same person and *Jacob Butz,* (prout assignment,) without stipulating for a release.

" On the 7th of *March,* 1820, *Moore, Myers,* and Co. executed an assignment of the same nature, to *William Allen* and *Richard Rowley,* in which assignment is a provision in favour of certain preferred creditors, and also in *favour of general creditors who shall within a certain limited time, execute a release to the said Moore, Myers,* and Co., (prout assignment.)

(Stoddart, for the use of his Assignees, *v.* Allen and another, Assignees of Moore, Myers, and Co.)

" *Moore, Myers,* and Co. were indebted to *John Stoddart,* at the time of executing their assignment, exclusive of the accommodation notes and indorsements existing between them, in the sum of twelve thousand and sixty-one dollars and thirty-four cents.

" The assignees of *John Stoddart* executed a release to *Moore, Myers,* and Co., within the time prescribed by their assignment.

" A number of notes, some drawn by *John Stoddart,* and endorsed by *Moore, Myers,* and Co., and some drawn by *Moore, Myers,* and Co., and endorsed by *John Stoddart,* a part of them for the use of *Moore, Myers,* and Co., and a part of them for the use of *John Stoddart,* were outstanding in the hands of third persons, at the time when *Moore, Myers,* and Co. executed their assignment.

" The notes specified in the schedule A. hereto annexed, were in the hands of the holders therein mentioned; were originally given for the use of *Moore, Myers,* and Co.; the said holders did not execute the release to *Moore, Myers,* and Co., but resorted to the estate of *John Stoddart,* and these notes were, after the time for executing the release to *Moore, Myers,* and Co. had expired, under a general arrangement between the assignees of *John Stoddart,* and the creditors of *John Stoddart,* paid by the said assignees with the estate of the said *John Stoddart,* assigned to them as aforesaid, distributed among the creditors, (prout arrangement,) and are the notes on which the assignees of *Stoddart* claim a dividend from the assignees of *Moore, Myers,* and Co., to recover which, this suit is brought.

" The notes specified in the schedule B., are holden by the banks and persons therein mentioned; were originally given for the use of *Moore, Myers,* and Co.; the holders executed the release to *Moore, Myers,* and Co.; have claimed on the estate of *John Stoddart;* have received from his assignees a dividend of ten per cent. and are entitled to the benefits of such further dividend as may be made.

" The notes specified in schedule C., are holden by the Farmers and Mechanics' Bank; were originally given for the use of *John Stoddart;* the holders executed the release of *Moore, Myers,* and Co., and have received from their assignees a dividend of twelve and a half per cent. They have also received from the assignees of *John Stoddart,* a dividend of ten per cent.

" The notes specified in schedule D., are holden by the banks therein mentioned; were originally issued for the use of *John Stoddart;* the holders have not executed the release of *Moore, Myers,* and Co., and have not received and are not entitled to receive any dividend from their estate. They have received a dividend of ten per cent. from the assignees of *John Stoddart.*

" The defendants, under the assignment, have declared a dividend of twelve and a half per cent.

" On these facts the following questions arise for the decision of the court:

(Stoddart, for the use of his Assignees, *v.* Allen and another, Assignees of Moore, Myers, and Co.)

1. "Whether the assignees of *John Stoddart* are entitled to a dividend from the estate of *Moore, Myers,* and Co. on the notes mentioned in schedule A.?

2. "If entitled, whether such dividend is to be on the amount of the notes or any other amount? If the court shall be of opinion in favour of the plaintiffs, judgment to be entered for the plaintiffs; the amount to be ascertained by the court, or by reference under its direction."

## SCHEDULE A.

"The State Bank at *Camden*, (*N. J.*) held the following notes:—

| | |
|---|---:|
| One, dated the 5th of *February*, 1820, drawn by *Moore, Myers,* and Co., in favour of, and endorsed by *John Stoddart*, at sixty days, for | $500,00 |
| One, dated the 15th of *January*, 1820, drawn by *John Stoddart*, in favour of, and endorsed by *Moore, Myers,* and Co., at sixty days, for | $350,00 |
| One, dated the 24th of *December*, 1819, drawn and endorsed as the last, at ninety days, for | $2651,37 |
| | $3501,37 |

"The Bank of *Pennsylvania* held the following:—

| | |
|---|---:|
| One, dated the 22nd of *February*, 1820, drawn by *Moore, Myers,* and Co., endorsed by *John Stoddart*, at sixty days, | $1350,00 |
| One, dated the 16th of *February*, 1820, same drawers and endorser, at sixty days, | $900,00 |
| One, dated the 2nd of *February*, 1820, drawn by *John Stoddart*, endorsed by *Moore, Myers,* and Co. at sixty days, | $600,00 |
| | $2850,00 |
| | $6351,37 |

"The Commercial Bank of *Pennsylvania* held the following:—

| | |
|---|---:|
| One note, dated the 14th of *January*, 1820, drawn by *John Stoddart*, endorsed by *Moore, Myers,* and Co., at sixty days, | $2000,00 |
| "*J.* and *W. Lippincott* held the following:— | |
| One note, dated the 15th of *September*, 1819, drawn by *Moore, Myers,* and Co., endorsed by *John Stoddart*, at six months, | $2943,06 |
| One note, dated the 5th of *November*, 1819, same drawer and indorsers, at five months, | $466,90 |
| | $3409,96 |
| | $11,761,33 |

"All for the use of *Moore, Myers,* and Co."

(Stoddart, for the use of his Assignees, *v.* Allen and another, Assignees of Moore, Myers, and Co.)

SCHEDULE B.

| | |
|---|---:|
| " The State Bank at *Camden*, a note for - - | $500,00 |
| The *United States* Bank, three notes amounting to - - - - - - - - - | $2,000,00 |
| The Bank of the *Northern Liberties*, two notes, amounting to - - - - - - | 850,00 |
| *Lambert*, a note, - - - - - - | 896,50 |
| *Henry Becket*, a note prosecuted to judgment, - | $3,199,03 |
| | $7,445,53 |

SCHEDULE C.

| | |
|---|---:|
| " The Farmers and Mechanics' Bank, two notes, amounting to - - - - | $3,287,50 |

SCHEDULE D.

| | |
|---|---:|
| " The *Camden* Bank, a note amounting to - - | $1,545,50 |
| The *United States* Bank, notes amounting to - | $3,186,70 |
| | $4,731,20 |

The assignment of *Moore, Myers,* and Co., after the usual words of transfer, and after sundry preferences, contained the following clause:

" After payment of the herein before mentioned debts, the amount of monies remaining in the hands of the said *William Allen* and *Richard Rowley,* shall be paid unto and among such of the creditors of the said firm, (or of the individuals composing the firm of *Moore, Myers,* and Co.,) residents of the *United States,* who shall execute a release bearing even date herewith (deposited with the said assignees,) within sixty days from the date thereof, and also unto and among such foreign creditors, or those residing out of the *United States,* as shall execute the said release within six calendar months from the date thereof, in fair and rateable proportions and dividends, of and upon their respective debts and claims, so far as the said residue of the estate of *Moore, Myers,* and Company, and their estates individually will go to discharge and satisfy the same."

It was contended by *Chauncey* and *Binney,* for the plaintiff, that the assignees of *Stoddart* having satisfied out of his estate, the holders of the notes in schedule A., although after the time stipulated for the execution of the release, and although the holders of the notes had not executed it, were entitled, by a fair construction of the assignment, to a dividend on them.

The great object of the assignment was to provide for the payment of all the debts of the assignors. The notes were included as debts, not the holders of the notes as creditors. It was no matter in whose hands the notes lay. The names of the payees were only

introduced to describe the class of debts, not to fix on the persons who were to receive the dividends.

[Tod, J.—What is the rule in cases of bankruptcy?]

Under the *English* statutes of bankruptcy, that is, if *Moore, Myers,* and Co., had committed an act of bankruptcy, the plaintiffs would be entitled to a dividend.　Prior to 7 *Geo.* 1, a note of hand could not be proved before it became due.　49 *Geo.* 3, let in the surety.　6 *Geo.* 4, adopts the same principle, and goes further, letting in contingent debts generally. . The term creditor, in this assignment, means any person who has paid or is liable to pay; though the dividend cannot be claimed till after payment is made.

They cited, *Heilner* v. *Imbree,* 6 *Serg. & Rawle,* 401.　*Lee* v. *Rapp, Mosely,* 318.

*D. P. Brown* and *Rawle,* for the defendants, observed, that the holders of these notes having by their omission to execute a release within the limited time, clearly forfeited their right to the benefit of the assignment, could not, by the arrangement made with the assignees of *Stoddart,* convey to them any right to a dividend.　The case would have been different if the arrangement between those assignees and the holders, had been made within the sixty days. The release executed by them would have covered the notes, of which, by that arrangement, they had become the proprietors; but as the case stands, they have not the shadow of a right.　They cited *Howis* v. *Wiggins,* 4 *Durnf. & East,* 714.　*Cowley* v. *Dunlop,* 7 *Durnf. & East,* 565.　*Buckler* v. *Buttivant,* 3 *East,* 72.　*Ex parte Walker,* 4 *Vesey,* 373.　*Ex parte Earle,* 5 *Ves.* 833. '

The opinion of the court was delivered by

Smith, J.—It appears, from the case submitted to this court for their opinion, that *John Stoddart,* and the firm of *Moore, Myers,* and Company, had considerable dealings together, and that they were desirous of mutual accommodation, which was afforded by lending to, and endorsing notes for each other, and which proved, as is often the case, ruinous to both parties.　Hence, it became necessary for them to execute assignments for the benefit of their creditors.　The former, on the 21st day of *February,* 1820, made a general assignment to *Thomas Fletcher,* and on the 25th day of the same month, executed another of the same nature to the same person, and to *Jacob Butz.*　On the 7th day of *March,* 1820, the latter executed an assignment to *William Allen* and *Richard Rowley,* for a similar purpose, containing, however, a provision in favour of certain creditors, whom they preferred, and a further provision in favour of *general creditors,* who should *within sixty days,* execute a release to them.　At the time of executing this assignment, *Moore, Myers,* and Co., were indebted to *John Stoddart,*

(Stoddart, for the use of his Assignees, *v.* Allen and another, Assignees of Moore, Myers, and Co.)

in the sum of twelve thousand and sixty-one dollars and thirty-eight cents, exclusively of certain accommodation notes, and endorsements, existing between them.   A release, as stipulated by *Moore, Myers,* and Co., in their assignment, was executed to them by the assignees of *John Stoddart, within the time prescribed.* When *Moore, Myers,* and Co., executed their assignment, there were outstanding, in the hands of third persons, a number of notes, some of them drawn by *John Stoddart,* and endorsed by *Moore, Myers,* and Co.; and some drawn by *Moore, Myers,* and Co., and endorsed by *John Stoddart,* a part of them for the use of the former, and a part for the use of the latter.   The notes mentioned in the case stated, marked A., were in the hands of the holders there mentioned, and were for the use of *Moore, Myers,* and Co.   These holders did not execute a release to them, but thought proper to resort to the estate of *John Stoddart;* and, *after the time* for executing the release had expired, those notes were distributed among the creditors under an arrangement between *John Stoddart's* assignees and his creditors, and paid by the said assignees with *John Stoddart's* estate.   They are the notes, on which the assignees of *John Stoddart* claim a dividend, and for which this suit is brought against the assignees of *Moore, Myers,* and Co.   The question then is, can the assignees of *John Stoddart* recover a dividend from the estate of *Moore, Myers,* and Co., on the above mentioned notes? A debtor, may, by an assignment to others, dispose of his estate in trust, for the use and benefit of his creditors; in such an assignment, some creditors may be, and often are preferred, whilst others are postponed; and, however hard this may appear to be, yet the law is so; *lex ita scripta,* and we must take it as we find it.   Assignors too, like the present, generally consider drawers and endorsers of accommodation paper, entitled to a preference: it is considered as due, under an honorary obligation, and is almost always given.   The terms under which the preference is to be received, are prescribed by the assignor, as the lawgiver, in his deed of assignment, and a compliance with them, on the part of him, who is to have the benefit of the preference, is required.   These principles are not controverted.   *Moore, Myers,* and Co., in their assignment of the 7th day of *March,* 1820, preferred certain creditors, and took care besides, to prefer *general* creditors, who should, within a certain limited time, (sixty days,) execute a release to them; directing that whoever complied with this stipulation, should be entitled to the benefit of the fund allotted to such general creditors; but that such of them as did not execute the release required by the assignment, should not be entitled to any part thereof, and, in short, should not be "Creditors" of *Moore, Myers,* and Co., as to that particular fund.   The holders of the above-mentioned notes, were general creditors of *Moore, Myers,* and Co.; they did not, however, exe-

(Stoddart, for the use of his Assignees, *v.* Allen and another, Assignees of Moore, Myers, and Co.)

cute the release to them as stipulated in their assignment, but, resorted to the assignees of *John Stoddart*, or his estate, for payment of the notes. Nor was this all: after the time for executing the release to *Moore, Myers*, and Co., had expired, these same notes, under a general arrangement, between the assignees of *John Stoddart*, and *the creditors* of *John Stoddart*, were paid by his assignees with the estate assigned to them, and distributed among the creditors of *John Stoddart*. If, then, the assignees should be permitted to recover in this suit, it would be for the use of the creditors of *John Stoddart*, and, as I think, give rise to a double dividend. Be this, however, as it may, it is evident to my mind, that under the express terms of the assignment, the notes were not *a debt*, for which the plaintiffs could claim a dividend by virtue of the assignment, nor could the holders of them, although creditors of *Moore, Myers*, and Co., because they had not executed the release required; and, not complying with the terms of the assignment, had not entitled themselves to the benefit arising from the particular fund. In 6 *Serg. & Rawle*, 401, it was held, that the preference is not to the creditor, but the *debt*. Here it is reasonable to infer, that no debt was intended to be preferred, but such as the assignor should be discharged from. It would be unreasonable to give any one the benefit of the assignment, who could not secure him from liability to the notes in the hands of the holder. The consideration of the assignment, was personal exemption from the debt, and the assignor would not have the benefit of this consideration, if the notes could be brought against him by any one. The plaintiff alleges, that the holder could not release the assignor, without releasing him (the plaintiff,) at the same time. This is a strange objection coming from him, who could have obviated that consequence, by an arrangement with the holder. Even if he could not, it does not follow that he should be let in on the fund. The debtor had a right to make his own terms; and if the plaintiff was not in a situation to comply with those terms, it is his misfortune; but it gives him no ground to complain. It is no doubt the interest of the debtor *now*, that the plaintiff should come in on the fund. But it was not so at the time of the release, the period when the rights of the parties vested. It certainly was not, because the debtor was then exposed to the notes in the hands of the holders: and the plaintiff having since taken them up, can acquire no right, which he had not then. The assignees of *John Stoddart* stand in no better situation, than the holders, from whom they have derived their title, and who cannot, by making over to others such notes, thereby impart to them a benefit, to which they themselves were not entitled. These notes, on the 7th day of *May*, 1820, when the sixty days had expired, being the property of certain holders, if the assignees, to whom they were delivered by the several holders, were per-

(Stoddart, for the use of his Assignees. *v.* Allen and another, Assignees of Moore, Myers, and Co.)

mitted to receive a dividend, their situation would be better than that of the holders, if they had not parted with the notes. Such advantages the law does not recognise. The holders having resorted to another fund for payment, cannot, after this, transfer the notes to one, who, as a general creditor, had complied with the terms of the assignment, by executing a release for his own debts, so as to enable him under this release, in which the debt created by these notes was not embraced, to come in, and claim a part of a fund for them which the holders would have had no right to claim or demand. The right to receive a dividend cannot be made better by negotiating the notes after the sixty days mentioned in the assignment, had expired.

In this assignment, we have the words "creditors," and it is contended, that endorsers for their endorsements, or drawers for *Stoddart*, are *creditors* within the true meaning of the assignment; and this, whether they were compelled to pay the notes or not. It would be so, if *Stoddart* had held the notes at the time of the assignment, or had then received them for a valuable consideration; he would in that case, have stood in the situation of a creditor, and would have been entitled to receive a dividend on the notes; but at the time of the assignment, or at the time of the signing of the release, *Moore, Myers*, and Co., were not indebted to the estate of *John Stoddart*, or his assigns on these notes—no debt existed then, for his assignees obtained the notes after the sixty days; and upon what principle they could come in as creditors under the assignment, and claim a dividend, I am really at a loss to conceive. No debt was existing at this time, by or from either party,—no cause of action then existed by *Stoddart's* assignees against *Moore, Myers*, and Co.: their cause of action arose *after* the assignment, and arose by their taking up endorsed paper of a debtor, after they had executed a release of all actions and all causes of action existing on the 7th day of *March*, 1820; not of causes of action, which should exist thereafter, as on the 7th day of *May*, 1820. An endorser or transferee, who did not entitle himself to the notes, by actually paying for them before the assignment, cannot be a creditor within its terms. I believe no instance can be produced, where an endorser of a note was ever entitled to sustain a suit, when no payment was made by him. In the case of a bankrupt, an endorser being in the nature of a surety, cannot prove a debt under the commission, unless he has actually paid the money *before* the bankruptcy. 1 *Hen. Blacks. Rep.* 641.

I apprehend the remedy which the plaintiffs have upon these notes, is against *Moore, Myers*, and Co., or *John Stoddart*, personally; but to the fund in the hands of the assignees of *Moore, Myers*, and Co., they have not entitled themselves. My answer to the proposed question, therefore, is, that the assignees of *John*

(Stoddard, for the use of his Assignees, *v.* Allen and another, Assignees of Moore, Myers, and Co.)

*Stoddart* are not entitled to a dividend from the estate of *Moore, Myers*, and Co., on the notes, which were taken up by them, after the time of the assignment and release. Judgment is therefore to be entered for the defendants.

Judgment for the defendants.