## No. 10,713.

MRS. JOSEPHINE JERMAN VS. MRS. MARY TENNEAS ET ALS.

Interlocutory rulings may be revised by the court and corrected, if erroneous, before final judgment. Evidence, at first rejected, may, up to then, be received.

Parties litigant are not to be controlled unnecessarily in the order of the introduction of their evidence in civil cases.

Documents properly authenticated by United States representatives abroad are admissible in evidence in the courts of this State, under the provisions of Act 38 of 1837.

Where a man contracts a second marriage, while his first wife is living and undivorced, and dies leaving property acquired during the second marriage, contracted in good faith, a community existing in both cases, the estate must be shared equally between the two wives, under the rule of *stare decisis*, which has become a rule of property.

Jerman vs. Tenneas et al.

A PPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Buck, Dinkelspiel & Hart* for Plaintiff and Appellant:

1. When a man contracts a second marriage while his first wife is living and un-divorced, and dies leaving property acquired during second marriage, if the second wife married in good faith, the estate shall be shared equally by the two wives. 39 An. 1021; Inkstein vs. Hubbel, 7 An. 252.

2. Documents purporting to be certified copies of register or record of marriage and baptism. certified or attested by the mayor (burgomaster); further attested by a higher state official, subscribing himself "judge of the district;" and the latter's official character attested by an American consul, are admissible in evidence and make full proof of the statements contained therein or the facts recited. Act No. 38, Acts of 1837; Succession of Wedderburn, 1 Rob. 263.

3. Foreign laws may be proved by parol evidence. A book of printed laws, pur-porting to contain the laws of the German empire, sent to the consul of the empire in this city and State, as *such laws*, to guide him in the discharge of his official duties, is admissible to show what such laws are. Wakeman vs. Mary-land, 5 N. S. 270, Sec. 5, Act No. 158 of Acts of 1855.

4. The *identity* of the parties named in pleadings—especially a plaintiff—is always presumed, and need not be proved unless specially denied or put at issue.

*Farrar, Jonas & Kruttschnitt* for Defendants and Appellees:

1. Foreign written laws can only be proved by an exemplified copy under the great seal of the state. Greenleaf on Evidence, Vol. I, Sec. 486, *et seq.*

2. An uncertified pamphlet, in possession of a foreign consul, can not take the place of an exemplified copy. His statement that his government issued it to him for official use is not admissible.

3. Before a foreign certificate of marriage or birth can be admitted, it must be proven that the foreign law required such a record to be kept. Bishop on Mar-riage and Divorce, p. —.

4. The rule that plaintiff must make his case certain and not probable, applies with tenfold force in a case fraught with serious consequences to the status of an honest woman and nine children.

5. There is no proof in the record of the identity of the plaintiffs.

6. The evidence fails to show that the husband and father of the defendants was the husband and father of the plaintiffs.

The opinion of the court was delivered by

BERMUDEZ, C. J. This case was once before this court on an ap-peal from a judgment sustaining in part an exception of no cause of action and overruling it otherwise. 39 An. 1021.

The judgment was considered obscure and construed. With the interpretation thus put, the case went back for further proceedings. After trial the plaintiff was cast, and thereupon appealed.

The action has now for its object the revendication of the undivided half of certain real estate and of the revenues thereof *since* judicial demand.

The petition is in the name of Josephine Jerman, born Attinger, residing in the village of Moos, Canton Pfist, Upper Alsace, Germany.

It alleges that she was married on the 19th of March, 1851, in the village of Reisbach, in said Upper Alsace, to Francis Jerman, who was known subsequently in New Orleans by the name of Germaine, and that a child was born to them during marriage, named *Josephine;* that shortly after the birth of that child, he emigrated to America, remained unheard from by her until long after his death, which occurred on the 2d of June, 1873; that he contracted marriage in this city with Mary Tenneas, the defendant, about 1855, they having several children; that he left real property which is described and which has yielded revenues, which were received by said Mary Tenneas and her children, who should be condemned to pay the same back; that, conceding that the second marriage was contracted in good faith by that person, the petitioner is entitled, under the law, as surviving spouse in community, to the undivided half of said property and revenues.

The petition concludes with a prayer, in accordance with the averments.

To this petition an exception of *no cause of action* was originally filed.

The judgment of the lower court upon it was that, in so far as the petition concerns the money demand against the heirs, the exception be maintained, and, as to the widow, as far as concerns rents and revenues, up to judicial demand, it be also maintained, and that *otherwise* it be overruled.

This judgment was affirmed, the court announcing that the only question really presented for solution was whether there was any liability against the defendant for revenues received *before* the suit and deciding it in the negative.  39 An. 1021.

The court held that *otherwise* the petition disclosed a cause of action, reaffirming the established doctrine that when a man contracts a second marriage, while his first wife is living and undivorced, and dies leaving common property acquired during the second marriage, contracted in good faith, the estate will be shared equally by the two wives.

After the case had gone back to the lower court, it was tried on issues formed by a general denial, setting forth good faith on the part of the defendant, and a denegation of the alleged marriage of her husband with the plaintiff.

Oral and documentary proof was adduced, and the district judge dismissed the suit, with judgment against plaintiff and for defendant.

He says that it is possible that the plaintiff Josephine Attinger and Josephine Zimmerman are one and the same person, and that Francis Jerman, who married Josephine Attinger, was the person who afterward married the defendant, but this has not been proved with moral certainty.

### I.

On the trial in 1889, certain documents purporting to be copies of the act of marriage of the parties, of the registry of the birth of Francis Jerman and of that of Josephine, born during the marriage, were offered in evidence.

Their admission was objected to, *because* they had previously been offered and excluded, a bill being reserved, to which they are attached, and that it is contrary to the ordinary rules of judicial proceedings to offer the same a second time on the same trial; and also *because* they are inadmissible in evidence without previous proof of the foreign law of the locality, to the fact that the law required such records to be kept, and that the officers certifying such records are the custodians thereof, and are authorized to give certificates. The objections were overruled, and the evidence received.

It is a fact that, in 1888, at the opening of the trial *before* the judge *then* presiding over the court, the documents were offered and on objection excluded, a bill being reserved; but this is a matter of no moment to prevent their subsequent admission by the same judge, or his successor, as was the case.

Judges have the right, *proprio motu*, to correct rulings of theirs made during the course of proceedings before them, prior to the judgment, and are clothed even with the power, after *final* judgment and before signature, to set aside, of their own accord, their conclusion and try the case *de novo*. C. P. 547, Sec. 4.

That which they can do spontaneously, they assuredly can accomplish on the suggestion of the party aggrieved. The more includes the less.

On the second ground, conceding *arguendo* that proof of the foreign laws should be made, it is immaterial that it be adduced *previous* to the offer. It suffices that it is made before the closing of the evidence, as was done in this case, by the production of the authentic texts of the local laws from books or extracts, or under admission of what the foreign consul here would swear to if heard as a witness.

Besides, litigants are not unnecessarily to be controlled in the order of the introduction of their evidence in civil cases.

It is, however, questionable whether such proof was at all exigible, as the documents bear the certificates of the local officials, whose signatures are attested under seal by the United States vice consul, who expressly declares " that they are duly commissioned to execute such acts, and that their signatures are genuine."

Under the ruling in the Stein Case, 9 La. 231, the objection would have stood, but it has no merit now, for since that decision the Legislature, to do away with [its effects, passed Act No. 38 of 1837, providing for the authentication of foreign documents before the courts of this State, which is still in force and settles the question. It was considered in the succession of Wedderburn, 1 R. 263. In presence of this special statute, what may be found to the contrary in Greenleaf, Vol. 1, Sec. 486, relied on by defendant, does not obtain. The documents were therefore properly admitted.

## II.

The act of marriage shows that Francis Jerman, on the 19th of March, 1851, a shoemaker, born on November 1, 1820, aged 31 years, domiciled at Reisbach, and Josephine Attinger, same domicil, born on November 29, 1823, at Moos, the names of the parents of both being given, were lawfully married by the mayor of Reisbach.

The second document shows that Francis Jerman was born on November 1, 1820, and gives as the names of his father and mother the same as are found in the act of marriage.

The third act shows that Francis Jerman at the time of the registry of the births presented to the local proper officer a *female* child born on the 20th of June during his marriage with Josephine Attinger, his wife, to whom the name of *Josephine* was given.

There is satisfactory oral testimony proving that one Francis Jerman from Reisbach, a shoemaker, married about 1851 (1852) at Reisbach a girl named *Josephine*, born at Moos, who was known as

Josephine *Zimmerman*, her father being a carpenter, a *Zimmerman;* that during their marriage there was born a girl named *Josephine;* that some time after, Francis left the country for America, and that he was met at Louisville, Osyka and *New Orleans*, at which last place he worked as a *shoemaker*.

There is no dispute that some time in 1855 the defendant, Mary Tenneas, married a man by the name of Francis Germaine, and that several children were born during that marriage, who are with their mother made defendants in this case.

The contention is that the Francis Germaine whom the defendant married is not the Francis Jerman who married Josephine Attinger, and that the Josephine Zimmerman, of whom *three* witnesses speak for having known her in Moos, is *not* the Josephine Attinger whom Francis Jerman married in 1851 at Reisbach.

Unless the witness Blaize Neberschleg perjured himself and is unworthy of belief, the identity of Francis Jerman with Francis Germaine is sufficiently established, for he swears unqualifiedly to the same and circumstances his testimony so as to leave no doubt on the subject. Further facts might possibly have been elicited from him which would have better established the identity beyond all imaginable peradventure.

The defendant in her testimony furnishes a link by declaring that from his own saying her husband was born on the 1st of November, 1820, the date of the birth of Francis Jerman.

The witness named testifies that the girl whom Francis Jerman married at Moos went by the name of *Josephine*. He does not know her family name; but she was called Zimmerman, perhaps, because her father was a carpenter, which *Zimmerman* means in German. He says there was born to them a girl named *Josephine;* that Francis Jerman was a shoemaker; that he made shoes for him here, and that he passed here as the husband of the defendant.

The sister of the witness, Mrs. Meyers, and Frank Mellerich, plaintiff's agent, testify in a way which sufficiently establishes that the *Josephine*, whom Francis Germain married in Reisbach, is *the* Josephine Attinger named in the act of marriage, and who is the plaintiff here, and the mother of the little girl *Josephine*, born during their marriage.

It is worthy of note that the name of the man who married the

40

defendant, which is *Germain*, as appears on the deed of purchase, is *idem sonans* with *Jerman*, with slight variation.

Attempts have been made to assail the testimony of the *three* witnesses, heard on behalf of the plaintiff, by questions on cross-examination, the object of which apparently was to confuse them and have them to contradict themselves; but the purpose was not accomplished. If they have shown some vacillation or weak memory, they promptly corrected or explained themselves whenever the opportunity offered itself to do so.

Their veracity remains unimpeached. It must be noted that they are ordinary, illiterate persons, save the agent, who, however, testified consistently on the whole.

The attack on his motives in acting as the agent of the plaintiff does not weaken, if true, his sworn declaration.

It is a singular circumstance that the defendant did not offer in evidence her act of marriage. Was it because it does not exist, or because, if exhibited, it might have shown recitals of some weight in the scale in favor of plaintiff?

The reasonable requirements of the law, even as claimed to be announced by Greenleaf, Ev., Vol. II, Sec. 461, have been sufficiently complied with to establish the identity of the parties in a case like this.

The district judge considered that the identity of the parties and consequently the marriage of Josephine Attinger with Francis *Germain*, whom the defendant married, had not been sufficiently established.

Finding that the marriage is proved does not operate a conviction of adultery by the defendant and stigmatize her, as a disgraced illegitimate widow, and taint her children as adulterous bastards.

The concession by the plaintiff and the assertion by the defendant that the second marriage was contracted in *good faith* by the wife justify the legal conclusion that the marriage produced *civil effects* which enured to the benefit of both the wife and her issue, under textual provisions of the law. R. C. C. 117.

It must be conceded, however, that it was a difficult undertaking to prove in 1889 the identity of an individual who married in 1851 in Europe and in 1855 in America, and who died in 1873. Under the exceptional circumstances of this case it was morally shown, so as to warrant the conclusion reached in this case.

### III.

The record shows that the property described in the petition was purchased in 1871, during the alleged second marriage, but there is nothing that we could discover establishing the revenue *since judicial* demand, and we do not find the admission of the defendant alluded to by the plaintiff, who, on the contrary, says that there is not a syllable of proof on the subject in the record.

The record of the litigation between the present defendant and Mallerich might have been admitted in evidence, but it would not have proved the revenues received from judicial demand to the closing of the trial. At best it would have shown some receipts, and the case would have had to progress on the remanding for the rest. It is better not to try cases piecemeal and to dispose of them only after all the evidence of which they are susceptible has been introduced and considered.

The claim of the plaintiff to one-half of the property is not disputed by the defendant, who utters not a word against it. Even then, it could not be successfully controverted.

The real estate was acquired by Jerman, *alias* Germain, during the existence of his marriage with Josephine Attinger, which was not dissolved until his death, in 1873.

It was acquired, therefore, during the community *régime*, and, at the dissolution of the community, by the death of the husband, title to half vested in Josephine Attinger, regardless of the second marriage, whether contracted in good faith or not.

The question as to what became of the other half does not arise, by reason of the admission of good faith, made by the plaintiff in favor of the defendant, and of the silence of the child of the first marriage and of the absence of any issue and contention about it.

Did it arise and were it *res nova* it might present some difficulty, particularly if the French system was consulted; but, under the rule of *stare decisis* it is finally settled and has become a rule of property, which should not be lightly disturbed.

A perusal of the opinions of Mr. Justice Rost, in the cases of Patton and of Inkstein, 1 An. and 7 An., will amply repay reading. The able and indefatigable Justice, with his usual sagacity and erudition, guided by the Spanish law, which had a bearing and which he quotes in the *first* case, and with which, though at the time repealed, our law was assimilated, in the *second* case shows that the second half passes to the wife, because the husband, by his misconduct, forfeits

all his rights thereto in favor of the deceived wife, and transmits nothing by his death to his issue, who are thus excluded from all inheritance, except that of his separate property. Patton vs. Phila., 1 An. 98; Inkstein vs. Hubbell, 7 An. 252; Ashton vs. Ashton, 15 An. 137; 39 An. 1021; 3 M. 438.

While reversing the judgment appealed from and recognizing the right of the plaintiff to one undivided half of the property involved, with a reserve of her right to claim the revenue from *judicial* demand, we think that it would not subserve the ends of justice to *nonsuit* her as to the rents, but that it is preferable to remand the case to enable her to prove the same.

It is, therefore, ordered and decreed that the judgment appealed from be reversed; and

It is now ordered and adjudged that there be judgment in favor of the plaintiff, Josephine Attinger, recognizing her as the owner of the undivided half of the property described in the petition, and entitled to half of the net revenues thereof from judicial demand till settlement; and

It is further ordered and adjudged that for the purpose of enabling her to recover said half of said revenues, the case be remanded for further proceedings according to law, the defendant to pay costs in both courts.