Statement of the Case.
NICHOLLS, J.
The plaintiff seeks in this ease to compel the defendant to accept title and comply with his obligations under an *1003 agreement to purchase certain real estate which was made between plaintiff, as vendor, and defendant and his brother Ernest Marx, as vendees. The defendant pleaded the general issue, except as specially admitted.
He admitted that he and his brother agreed to purchase certain property by a written agreement, containing stipulations, between the parties. He admitted that he was the universal legatee of his brother; that he had inherited his rights, and was therefore bound by the obligations of the said agreement.
He denied that any tender whatever had been made to him of the property, and that he had waived the necessity for a tender. He denied specially that the title of Jacob Werner was good and free from incumbrances. He specially averred that the same was incumbered by mortgages, and that the title was bad and defective, and not one he should be compelled to accept He further averred that said title was incumbered in many respects, and specially pleaded the following defects:
That Victor and Robert Werner, or persons calling themselves by the said names, acquired said property from said T. L. Bayne by act before E. M. Cahn, notary public, dated April 20, 1896, and part from Felix Poche by act before E. M. Oahn, notary public, dated August 8, 1893.
That Robert Weruer died, and his succession was opened in the civil district court (No. 58,625 of the docket). That by final judgment in said succession the following were decreed to be the heirs of Robert Werner:
Abraham Kurzezunge, his father.
Victor Kurzezunge Werner.
Salo Kurzezunge Werner.
Pauline Kurzezunge Werner.
Dorothea Werner, mother.
Jacob Kurzezunge Werner.
David Kurzezunge Werner.
Marie Kurzezunge Werner.
That said parties, namely, Abraham Kurzezunge Werner, Dorothea Werner, David Kurzezunge Werner, Pauline K. Werner, and Marie Kurzezunge Werner, never authorized the sale of their interest in the property, and never sold the same.
That, however, one Vietor K. Werner pretended to transfer their interest under a so-called power of attorney, which is alleged to have been executed before one Schmidt on March 18, 1901, but that said document contradicts itself, and was not a valid procuration. That said document was never signed by said parties, nor by any one bearing the legal name of Werner. That there was no legal proof whatsoever of the signatures of said document, nor was there any proof that they were the parties whe were recognized as the heirs of Robert Werner.
That the said document declared that the signers had no interest in the succession, and that they had been settled with, although in the latter part it pretended to appoint Victor K. Werner as their mandatary. That said document was not witnessed as-required by law, nor was it executed' before the United States consul. That defendant had a right to require due and legal proof of the capacity of the parties pretending to-be the heirs of Robert K. Werner, the identity of the parties, and due and legal proof of their signatures.
That Victor K. Werner, pretending to act under this so-called power of attorney, pretended to transfer said property to Jacob Werner, the plaintiff herein, but that Jacob K. Werner never acquired a good and valid title, by reason of the so-called transfers, which were null and void and of no effect.
That, should the court hold otherwise,, then he was entitled, before being compelled to accept title, to be presented with clear mortgage, conveyance, and United States court certificates in the name of all the aforesaid parties.
In view of the premises, he prayed to be *1005 hence dismissed, but, 'should the court hold the title to be good and valid, then in that case the court should decree that the plaintiff be compelled to furnish clear mortgage, conveyance and United States court eei'tifi-' cates in the names of all the parties, and tax researches showing that the property was free from all mortgages and taxes. And defendant further prayed for all such relief as in law he was entitled to.
The district court rendered judgment against the defendant in favor of the plaintiff, and defendant has appealed.
Opinion.
In the brief filed on behalf of defendant and appellant, his counsel say:
“Plaintiff claims to have acquired said property by two acts of sale from seven vendors, five of whom were represented by Victor Werner under an alleged act of procuration which it is claimed they signed in Germany before a magistrate by the name of Schmidt. This so-called power of attorney forms the sole issue in the case.”
The act so referred to was written in German, and, as translated, was as follows:
“Agreement between Victor K. Werner and his coheirs representing the inheritance of Robert K. Werner, deceased, to wit:
“Abraham Kurzezunge.
“Dorothea Werner.
“David Kurzezunge Werner.
“Pauline Kurzezunge Werner.
“Marie Kurzezunge Werner.
“The said parties recognizing that they have received from said Victor K. Werner the amounts coming to each and all of them respectively as set forth in the judgment of the Civil District Court, in matter of Succession of Robert K. Werner, deceased No. 58,625, Division B, now give unto said Victor K. Werner, full and final dischargé for his administration and management of the same and declare that they have received their said rights in full, and have no further claims in the premises.
“And now all said parties agree to appoint, and constitute as their mandatary with full powers to sell, mortgage, alienate and transfer, the real estate mentioned in said succession and situated in the city of New Orleans, at the corner of Constance and Robin streets, and numbered 1431, 1435, 1441 and 1443 Constance street, and the said Victor K. Werner is hereby empowered with all necessary means to execute said power of attorney such, among others, as fixing the prices of sale of said properties and all matters pertaining thereto, and he may act of his own authority out of court and may, if he deem best, obtain judicial authority for that purpose.
“Done and signed this-day of-, A. D. 1900.
“[Original signed]
“Abraham Kurzezunge.
“Dorothea Kurzezunge, Geboren [born] Werner.
“David Kurzezunge.
“Pauline Kurzezunge.
“Marie Kurzezunge.”
Attached to this act was a certificate of attestation, written in German, which, as translated, was as follows:
“The above signatures.
“(1) of Abraham Kurzezunge — merchant
“(2) of his lawful wife Dorothea Kurzezunge, born Werner.
“(3) of Pauline Kurzezunge, single.
“(41 of Marie Kurzezunge, single.
“(5) of Dr. David Kurzezunge.
“All domiciled in Plesehen are certified to.
“[Seal of the Police Administration of the City of Plesehen.]
“The Police Administration. [Signed]
“Schmidt.”
Attached thereto was the following certificate:
“United States Consulate Breslau.
“Province of Silesia, Empire of Germany.
“The 20th day of March, 1901.
“I — Neander Alexander as Vice and Acting Consul, in and for the provinces of.Silesia and Posen, Germany, do hereby certify to the signature of Schmidt and the Seal of the Royal Prussian Police authorities at Plesehen, Province of Posen, Germany, he being a duly authorized person according to the laws of Germany, to take the foregoing acknowledgment.
“In witness whereof, I have hereunto set my hand and seal of this consulate, the date and place above written. [Signed] Neander Alexander, United States Vice and Acting Consul. [Seal of the U. S. Consulate, Breslau.]”
It was admitted on the trial (though at one time denied) that Abraham Kurzezunge was the father, and Dorothea Werner the mother, of Robert Werner and Victor Werner, Jacob Werner, Salo Werner, residents of New Orleans, and David Werner, Pauline Werner, and Marie Werner, residents of Plesehen, were his brothers and sisters; the name of Werner (that of the mother) having been *1007 ■adopted, by the members of the family who went to America.
The above-named parties were the sole heirs of Robert Werner, who died in New Orleans on the 17th of February, 1899, and were so recognized by the civil district court for the parish of Orleans, and sent into possession on April 14, 1899.
At the time of Robert Werner’s death, he and his brother Victor Werner were owners in equal proportions of the property involved in this litigation. On the 3d of August, 1901, by act before E. M. Cahn, notary public, Salo K. Werner and Victor K. Werner (the latter acting on his own behalf, and as an agent of Abraham Kurzezunge, his father, Dorothea Werner, his mother, David Kurzezunge Werner, his brother, Pauline Kurzezunge, his sister, and Marie Kurzezunge Werner, his sister) sold that property to Jacob K. Werner, and the latter entered later into the agreement with Edward and Ernest Marx which is herein sought to he ordered to be specifically enforced.
On the trial of the case the district judge overruled the objections which were urged by the defendant to the power of attorney of the heirs of Robert Werner residing in Germany to Victor Werner, and held that it had been proved to his satisfaction. Referring- to that instrument in his reasons for judgment, he said:
“It was contradictory in these foreign heirs to grant a full receipt to Victor Werner, their mandatary, for all that was due them in the premises, and then to proceed to authorize him to sell the real estate in which they had just disclaimed having an interest. But this contradiction is explained by the fact that the testimony shows that they had actually received from Victor Werner the money for their interests in the real estate here involved, but there had been no act of transfer. So they authorized Victor Werner to transfer their interests, and he transferred as agent to plaintiff for a price previously agreed upon. The contradiction is not fatal.
“Defendant urges the insufficiency of the mandate: (1) Because the document is under private signature, and the signatures were not proved. This objection is met by positive evidence produced on the trial of the case. (2) Because the document is not witnessed, and was not executed before a U. S. consul. If these things had been done, it would have been a public act.
“The signatures to the mandate are certified to by ‘Schmidt, of the Police Administration of Plesehen,’ on March 18, 1901; and Neander Alexander, U. S. vice and acting consul, under date of March 20, 1901, certificates to the signature of ‘Schmidt,’ and that he is ‘a duly authorized person according to the laws of Germany to take the foregoing acknowledgment.’ This is sufficient. Act No. 164, p. 321, of 1898.”
The conclusion reached by the district judge, affirming the sufficiency of the act. executed by the foreign heirs of Robert Werner, is sustained by the evidence in the record. We do not find in it, however, the inconsistency charged. The act embodies at one and the same time an acknowledgment by those heirs that they had received everything coming to them from the succession of Robert Werner, and an authorization by them to Victor Werner to shift the legal title which they still held in the real estate over to some one else. It frequently happens that an heir in a succession, by reason of “avancements d’hoirie” therein during the lifetime of the father or other party from whom he inherits, or by reason of indebtedness to him, has really nothing to take in the settlement of the estate, but none the less holds in common with his coheirs the legal title to the real estate, of which it is necessary, for the protection of his coheirs and those dealing with them, he should be in some direct way divested. In Zeigler v. His Creditors, 49 La. Ann. 176, 21 South. 679, this court used the following language:
“The liquidation cannot be operated by making a comparison at any given date of the community property with the amount of a claim due by the community to the wife’s heirs, and assuming upon this comparison, showing that the community claim exceeded the value of the entire property, or one-half thereof, that therefore, and as resulting from said fact, the wife’s heirs became vested in the ownership of either the whole of the community property, or the half thereof. The legal title could not shift by a mere comparison of values. In order to bring about such a result, there would be required some direct act by and from which there should be made a direct transfer.”
*1009 This same doctrine has been recognized by this court in Boisse v. Dickson, 31 La. Ann. 754; Succession of Hautau, 32 La. Ann, 57; Le Bleu v. Timber Co., 46 La. Ann. 1465, 16 South. 501; and Brian v. Bonvillain, 111 La. 458, 35 South. 632. In this last case Octave Sigur, one of the heirs of his grandmother Mrs. Edouard Sigur, had signed an acknowledgment of receipt of all the property coming to him from that succession, and yet a third party was held authorized to purchase from him one-ninth interest in all of the immovables of the succession, as, on the record, his title therein had not been divested. Referring to the right of the purchaser so to do, this court said:
“Plaintiff had the right to assume that Oscar Sigur held at the time of his conveyance an undivided third interest in the home plantation as an heir to his grandmother. This interest, being an immovable, could pass out of Sigur only by some written evidence showing a divestiture of title. So far as the public was concerned, this divestiture of title should have been shown by the public records.
“There was no evidence of such divestiture shown, and plaintiff was entitled to buy the interest. He was not estopped by any latent or unknown equities existing between his vendor and his coheirs. * * * Assuming it to be true that Sigur had in some manner received after the death of his grandmother money or property of the succession as an heir, with which his coheirs would be entitled to charge him, we do not think that fact would carry with it, as a legal result, a proportional enlargement of the extent of the legal title which his coheirs held in the home plantation. Had this amount exactly equaled the entire share which Sigur would have been entitled to receive, title to that property would not have passed in its entirety to the Callerys and Mrs. Nouveret, nor could they dispose of it from that standpoint. The legal title would have remained as it was.”
These authorities show the necessity of some act by and through which the legal title of the foreign heirs should be shown to have been divested.
Had the act executed by the foreign heirs consisted solely of an acknowledgment that they had received all that was coming to them from the succession of Robert "Werner, that act, while it might estop those heirs, as between themselves and their co-heirs, from claiming more, would leave the latter exposed to the danger of a subsequent transfer by the former to the extent of the interest they held in the legal title to the immovables, or to a seizure thereof by creditors of the foreign heirs.
It might be true that the purchaser would, in point of fact, take nothing by his purchase, but none the less any one purchasing from the resident heirs would be subjected to the possibility of being thrown into joint ownership with this third party, and forced into litigation for the purpose of clearing the situation and ascertaining the extent of his rights. Boisse v. Dickson, 31 La. Ann. 754. Such purchaser from the resident heirs would have just reason to object to being placed in such a position. Had matters been permitted in the present case to rest on the mere strength of the acknowledgment of receipt of all of what was coming to them in the succession of Robert Werner, or upon that acknowledgment and still unexecuted action by Victor Werner under the power of attorney to him, the objections raised by the defendant would have been of the most serious character; but matters were not permitted to rest in that shape, for Victor Werner acted upon, the power to him, and transferred the interests of the foreign heirs in the property to Jacob Werner. The latter, having acted upon the faith of the acknowledgment, and by reason of the power of attorney to Victor Werner, would be protected against any claim advanced by a subsequent purchaser of those interests from the absent heirs, or any subsequent seizure of such interests by those creditors, as it is not pretended that the sale to Jacob Werner was not duly recorded, nor that there was any such transfer by those heirs to some one else, or any such seizure made by the creditors. We are of the opinion that the genuineness of the power of attorney has been properly and sufficiently established. In the first *1011 place, it is proved by the positive testimony of both Victor Werner and Isadore Simon, who are intimately acquainted with all the parties, and thoroughly familiar with their signatures; and their testimony would be, even if not fully established, corroborated by that of Schmidt, of the German police administration.
Defendant’s contention that all of the links of the title offered him must, as against him, be established by authentic evidence or evidence held to be authentic, because the foreign heirs were not parties to this suit, is not supported by any law or any decision which we remember or which has been called to our attention.
We are of the opinion that the genuineness of the power of attorney has been established independently of the testimony of Victor Werner and Isadore Simon, through the certificate of Schmidt, of the police administration in Germany, and the certificate of Neander Alexander, United States vice and acting consul at Breslau, in the province of Silesia, German Empire. Section 1436 of the Revised Statutes of 1876, declares that:
“It shall be the duty of the several courts of this state to receive the attestation of any American consul, consul general, vice consul or commercial agent residing in any foreign country as legal evidence of the attributes and official station or authority of any magistrates or other civil officer in such foreign country, under the laws thereof, which attestation, shall be full and complete proof that it emanated from said consul, consul general, vice consul or commercial agent as the case may be.”
Neander Alexander, United States vice and acting consul, has certified under the seal of the consulate “to the signature of Schmidt and the seal of the Royal Prussian Police authorities at Pleschen, Province of Posen, Germany, he being a duly authorized person according to the laws of Germany to take the foregoing acknowledgments.” If there was ever any question as to the necessity of this certificate being accompanied by the signature of two witnesses, it no longer exists under Act No- 86, p. 119, -of 1894, and Act No. 164, p. 321, of 1898.
The vice consul has certified to the signature of Schmidt, and as to his position,, capacity, and authority, while Schmidt himself has certified to the signature of the nonresident heirs.
We think the requirements of the law have been complied with. As a matter of course, our laws could not control the German officials in respect to the particular formalities which they shall take in receiving the acknowledgments of parties. Their power and. authority are fixed by their own laws. We-think this matter is covered by the decisions-of this court in Tucker v. Burris, 12 La. Ann. 872, 873; Jerman v. Tenneas, 44 La. Ann. 624, 11 South. 80; and Succession of Lauve, 6 La. Ann. 530.
On the trial of this case the plea of want of formal tender made by the defendant was waived, with the understanding that in the event of a judgment in favor of plaintiff, ordering defendant to take title and pay the price, plaintiff should furnish all customary and usual certificates required in connection with the sale, showing the property to-be free from - all incumbrances whatsoever, and to be standing in the name of the plaintiff, Jacob Werner. This stipulation was embodied in the judgment of the district court.
Eor the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed.