## Wood's Estate.

*Guardian and ward—Investments—Purchase of real property—Good faith—Surcharge.*

1. Ordinarily a guardian is relieved from liability for investing his ward's money in real estate only after having obtained leave of court. He is justified in investing without leave of court only where it becomes necessary to avoid a loss which would otherwise certainly result to the estate he has in charge, and in every such case the burden is on the guardian to show that the exigency existed.

2. Where a guardian has invested his ward's money in a mortgage, under circumstances which do not impugn his good faith, but just before his ward becomes of age forecloses the mortgage, and purchases the property for her account, without leave of court, and without consulting her, and fails to exhibit any reason why it was necessary to make such purchase, the Orphans' Court does not err in refusing to allow him credit for the amount so expended, and in requiring him to take the property and to pay the ward the amount of her money invested therein.

Argued Oct. 22, 1914. Appeal, No. 155, Oct. T., 1914, by Joseph M. Browne, guardian, from decree of O. C. Allegheny Co., Dec. T., 1913, No. 103, sustaining exception to guardian's account in estate of Laura G. Wood, a minor. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to guardian's account. Before OVER, P. J.

The facts appear by the opinion of the Supreme Court.

The court sustained an exception to an item of the account of Joseph M. Browne, guardian, claiming credit

for money invested in certain real estate.   Joseph M. Browne appealed.

*Error assigned,* among others, was the decree of the court.

*J. R. Sterrett,* of *Sterrett & Acheson,* for appellant.

*Thomas S. Schultz,* with him *Alexander Gilfillan,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 2, 1915:

If it were at all important to a proper determination of this case, we would at greater length express our dissent from the conclusions reached by the learned court from the facts as they are found to be.   For reasons which will appear later it is only necessary now to say, that where the good faith of a guardian in making an investment of his ward's money in a mortgage upon real estate is conceded, and where it is found that the guardian was a man of large experience in the real estate business, and that in making the particular investment complained of, he relied not simply upon his own judgment, but was supported by the advice and judgment of a reputable real estate appraiser of equal experience, more is required to justify a surcharge against the guardian, because of failure to realize from the mortgaged premises the full amount of the investment, than an opinion expressed by three witnesses called by an exceptant, that in the original transaction there was not sufficient margin between the amount invested and the actual value of the premises to make it a wise and prudent investment.   Where good faith is conceded a guardian's liability in such case as this arises only as want of common skill and prudence has been shown.   Accepting the findings of fact made by the auditing judge, nothing more prejudicial to the guardian can be inferred than that his judgment—as well that of

the expert he called to his assistance—as to the actual
value of the mortgaged premises was not as accurate as
that of the three witnesses would have been, who now,
after the fact, testify to an overvaluation by the guard-
ian. Were there nothing in the case but this we would
without hesitancy reverse the decree. This, however,
is the situation. The appellant was appointed guardian
in 1905. Out of the funds he subsequently received be-
longing to the ward's estate he invested $12,000.00 in
May, 1907, in a mortgage on a certain piece of real estate
situate at the corner of Franklin avenue and Durango
alley in the City of Pittsburgh. Some time during the
year 1913, for some reason not appearing, he foreclosed
the mortgage and became himself the purchaser:
Whether he took title to himself, or to himself as guard-
ian, does not appear, and we have nothing to indicate
the price he paid for the property except a finding that
the investment of the estate therein is now $13,499.47.
The record is silent as to the age of the ward at the time
of this transaction, but, since it occurred in 1913, we can
hardly be mistaken in assuming that she was then within
a very short time of her majority. We have thus stated
all that can be gathered from this record that is of any
importance in the present inquiry. This then, leaving
out of consideration the question of whether the original
investment in the mortgage was justified, is the situation
we have to deal with : a guardian without leave of court,
upon his own responsibility, within a very short time of
his ward coming of age, invests his ward's money in real
estate. In the settlement of his account the guardian
treats the property so purchased as the property of his
ward, and seeks to be credited with the sum of $13,499.47
on account of the purchase thereof. The ward repudi-
ates the transaction as one not binding on her, declines
to accept the purchased property and demands her mon-
ey. The appeal is from the decree disallowing the credit
claimed. Ordinarily a guardian is relieved from liability
for investing his ward's money in real estate only as he

has first obtained leave of the court so to do. There may be cases when he is justified in so doing without leave of the court, but only where it becomes necessary to avert a loss which would otherwise certainly result to the estate he has in charge, and in every such case the burden is on the guardian to show that the exigency existed. There is no pretense here that the purchase was made to protect this ward's estate from loss, unless it was that interest which had been accumulating for years, and for which the guardian himself was primarily liable, might be covered by the price. There is nothing upon the record to show any necessity for the foreclosure of the mortgage so shortly before the ward attained her majority; nothing to show any necessity for a purchase at a price exceeding the mortgage debt by $1,000 and more; nothing, in a word, to show any reason for disregarding the fixed and settled rule which forbids a guardian investing the ward's money in real estate. Under such circumstances it is the right of the ward to refuse to accept the real estate purchased by the guardian. It becomes a question not of value, but of pleasure on the part of the ward.

"The doctrine that a trustee cannot go beyond the line of his duty described by law, and make changes of trust property from money to lands, or lands to money, is well settled; and generally, if the trustee invests money in lands, the cestui que trust may, at his option, accept of the lands or refuse them and demand his money." Bonsall's App., 1 Rawle 265. It is no answer to say that the property is worth more than the price paid. Of that the ward has the exclusive right to judge and determine for herself. The guardian and the witnesses he called testified alike to a value far in excess of the price paid. Why not leave it at that? The guardian has the property; his ward is entirely willing that he should retain it upon paying her the amount owing her upon the mortgage. He need feel no embarrassment in realizing for himself the profit he is so confident of, and which his

ward persistently declines to accept, no matter whether out of generosity to him or from lack of confidence in the estimate of the value of the property which he and his witnesses have vouchsafed. For the reasons stated the decree is affirmed.