## Brown's Estate.

*Executors and administrators—Trusts and trustees—Delay in selling unauthorized securities.*

1. A fiduciary should not hold beyond a reasonable period investments made by the decedent in unauthorized securities, unless specially authorized to do so.

2. This rule was not intended to hamper fiduciaries in the control and management of estates. They need not rush into a conversion of the securities left by the decedent and, under the whip of the law, sell them below what they might normally expect to receive for them, thus causing an estate to shrink out of all proportion to any possible benefit that might arise through a strict application of the rule.

3. Investments in stocks or bonds are a means by which money is made to earn for itself money or income. The primary thought in both should be property value, then income.

4. In considering the sale of investments that have no open market, or bonds in a depressed market, or stock whose intrinsic value is established paying dividends equal to and above what would be a normal interest rate, reasonable latitude, according to the circumstances, must be allowed a fiduciary in the disposition of such property.

5. The first essential thing for a fiduciary to consider is the safety of the principal even though it may sacrifice income.

6. The judgment of a fiduciary acting in good faith on considered circumstances, should have controlling effect as to the time of sale of the particular investment.

7. The rule is, What would a prudent man ordinarily do if a similar situation confronted the disposition of his personal affairs? While over-exacting solicitude is not required, carelessness or disregard of the welfare of the estate will not be permitted.

8. The preservation of an estate from loss should be the primary thought and care of our courts. In the determination of what is business judgment, too much stress must not be laid on retrospection.

Argued October 5, 1926. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 118, March T., 1926, by Thomas M. Brown, administrator d. b. n. c. t. a., from decree of O. C. Allegheny Co., March T., 1926, No. 163, dismissing exceptions to adjudication, in estate of A. M. Brown, deceased. Affirmed.

Exceptions to adjudication of MITCHELL, J. Before MILLER, P. J., TRIMBLE and MITCHELL, JJ.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Thomas M. Brown, administrator d. b. n. c. t. a. of A. M. Brown, deceased, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*F. C. McGirr*, for appellant.—The executor should have been surcharged: Taylor's Est., 277 Pa. 518.

*John E. Winner*, for appellees.—An executor will not be surcharged with depreciation in value of securities when the same are held with the express consent of the heirs: Armitage's Est., 195 Pa. 582; Taylor's Est., 277 Pa. 518.

An executor is not liable beyond what he actually receives unless in case of gross negligence: Dauler's Est., 247 Pa. 356.

OPINION BY MR. JUSTICE KEPHART, November 22, 1926:

John D. Brown was the executor named in the will of his father, A. M. Brown, who died in 1910. He administered the estate until his death, which occurred in 1924. No formal account having been filed, this was done by the executors of John D. Brown, accounting for all the undistributed assets. Exceptions were filed by A. M. Brown's administrator, who was also an heir. He asked that the estate of John D. be surcharged for the loss sustained in the sale of stock of the Dispatch Publishing Company, the executor having held the stock for fourteen years after his father's death.

Since this stock was part of an estate passing at death to a legal representative, the question arises as to what was his duty with respect to holding or selling.

Taylor's Est., 277 Pa. 518, 525, our first case that deals extensively with the duty of fiduciaries who receive non-legal investment held by testator during his life, points out: that, though we have, in a number of cases, refused to surcharge fiduciaries with losses sustained through holding dividend paying corporate stock purchased by the decedent, such exemption from liability is not general but is subject to well-defined limitations. While the limitations must of necessity be less drastic than those controlling trustees in making original investments, absolute freedom from liability, or freedom, except when guilty of gross or supine neglect, is not the rule. Taylor's Case concerned bonds, an investment different in many respects from corporate stock. They were held for a long time after it should have been known by one of ordinary business knowledge that, to preserve at least the value fixed at testator's death, the bonds should have been converted.

The rule stated in Taylor's Estate as to such securities was that a fiduciary should not hold beyond a reasonable period investments made by the decedent in unauthorized securities unless specially authorized to do so, and that when a trustee continues to hold such non-

legal investments after a time when he could probably dispose of them and a loss occurs, he must be held liable for a failure to exercise due care; *unless he shows that his retention of the securities in question represents, not a mere lack of attention, but an honest exercise of judgment based on actual consideration of existing conditions;* in other words, he is expected to be ordinarily watchful and to exercise normal good judgment: Taylor's Est., supra, at page 528.

This rule was not intended to hamper fiduciaries in the control and management of estates. They need not rush into a conversion of the securities left by the decedent and, under the whip of the law, sell them below what they might normally expect to receive for them, thus causing an estate to shrink out of all proportion to any possible benefit that might arise through a strict application of the rule. One may readily see how too literal enforcement of the rule could be taken advantage of. In considering the sale of investments that have no open market, or bonds in a depressed market, or stock whose intrinsic value is established, paying dividends equal to and above what would be a normal interest rate, reasonable latitude, according to the circumstances, must be allowed a fiduciary in the disposition of such property.

Investments in stocks, or bonds are a means by which money is made to earn for itself money or income. The primary thought in both should be property value, then income. Occasionally the investor considers the latter paramount, depending largely on individual necessities. but the first essential thing for a fiduciary to consider is the safety of the principal even though it may sacrifice income. Careless disregard of this fundamental rule necessitated the surcharge in Taylor's Estate. When a 6% rail bond brought a premium of $25, it must have been patent that such paper was an attractive security and, to take advantage of its position, then was the advantageous moment to sell in protection of the principal.

When the bonds matured, no matter what the dollar value may have been or the cost of its use, the executor could get only its face value, and the estate suffered a loss in principal. The illustration in Taylor's Estate was a simple one, having fixed the maximum value at the maturity date which was close at hand. The difficulty of fiduciaries arises from the fact that there are usually no fixed values, but such as depend on the money market, assuming there is property value and income behind the investment. It is a well-known fact that the value of the dollar and the cost of its use fluctuates, affecting principal and income, though not in the same way. The judgment of a fiduciary acting in good faith on considered circumstances, should have controlling effect as to the time of sale of the particular investment. The matter is very well covered in these lines of the Chief Justice's opinion quoted above, "that the retention of the securities represent, not mere lack of attention, but the honest exercise of judgment based on actual consideration of existing conditions." The rule is, What would a prudent man ordinarily do if a similar situation confronted the disposition of his - personal affairs? While over-exacting solicitude is not required, carelessness or disregard of the welfare of the estate will not be permitted. In this class of cases it is obvious that each case must stand largely on its own facts.

It is not requiring too much from those persons who are entrusted with the care of estates. Indeed, as the property is supposed to be under the direct care of the courts, our duty is to see that appointed or selected officers are faithful and ordinarily diligent. Such rule cannot but appeal to any fair-minded person as being a just one. The preservation of an estate from loss should be the primary thought and care of our courts. In the determination of what is business judgment, too much stress must not be laid on retrospection. Our after-sight is not to be the sole judge, though it may be useful.

If the conduct of this executor were to be judged squarely on the legal principles announced in the Taylor Case, without any outside matter affecting his decision to hold the stock, we might be forced to hold that his retention of it so long, after his father's death, fixed him with liability for loss. The knowledge he must have had as director of the company, that its business was falling off, its dividends taking a drastic slump; these, with other matters would have caused any prudent man, not only to inquire, but also, if possible, to convert the stock. The dividend for the first seven years after his father's death ranged in amounts from nine dollars to twenty-three dollars a share, when it suddenly fell to six dollars a share, continued to decline for six years, and finally, when it was sold, it paid one dollar and sixty cents a share. What caused this slump does not appear, but it should have challenged the executor's immediate attention. His liability, however, would not be the difference between the appraised value and what the stock sold for, but the difference between what the stock would have brought had he exercised his business judgment, and what it actually sold for.

What exempts John D. Brown's estate from a surcharge and takes his act out of the operation of the rule just discussed is the agreement of the heirs and parties in interest to keep the stock, and from its earnings provide a fund to pay taxes and carrying charges on real estate not yet sold. In addition, the will placed a large discretion and confidence in the executor as to the time of sale and distribution of all of the estate. This appellant cannot now be heard to complain that his brother did not make sale of the stock sooner. We agree with the court below that there is nothing in the evidence from which we can hold that he failed to give the skill, prudence and judgment required in such duties, when he refused to sell the stock after the dividend slump because of the agreement of the parties and the

authority vested in him under his father's will: Detre's Est., 273 Pa. 341.

For these reasons the assignments of error are overruled and the decree of the court below is affirmed at cost of appellant.