## Dempster's Estate.

154

Argued April 13, 1932. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*William R. Scott,* of *Smith, Buchanan, Scott & Gor-
don,* for appellant.—Dempster cannot compel his ward
to accept in specie the Gilmore Drug Company's stock:
Simpson's Est., 253 Pa. 217.

Assuming that the Fiduciaries Act confers discretion-
ary authority to compel acceptance in kind over objec-
tion and refusal, such exercise, under the circumstances
existing in this case, would constitute a clear abuse of
discretion: Gilmore v. Gilmore Drug Co., 279 Pa. 193.

Dempster must account for and pay to his ward in
cash the fair value of the stock when he got it, or within
a reasonable period thereafter, within which he should
have converted it: Wood's Est., 247 Pa. 478.

If Mary Dempster can be compelled to accept the stock
in kind, the guardian must be surcharged for its decline
in value: Taylor's Est., 277 Pa. 518; Nyce's Est., 5 W.
& S. 254; Morris v. Wallace, 3 Pa. 319; Hemphill's
App., 18 Pa. 303; Plate's Est., 30 Pa. Dist. 902;
Schlegel's Est., 13 Pa. Dist. 764.

If Dempster had discretionary power to make or re-
tain nonlegal investments, his failure to sell or attempt
to sell the Gilmore Drug Company stock nevertheless
renders him liable to surcharge: Barker's Est., 159 Pa.
518; Hart's Est. (No. 1), 203 Pa. 480; Brown's Est.,

287 Pa. 499; Pray's App., 34 Pa. 100; Furness's Est., 82 Pa. Superior Ct. 452.

*John M. Freeman,* of *Watson & Freeman,* with him *Albert C. Hirsch,* for appellee.—The orphans' court has full authority, on termination of a guardianship, to direct a distribution to the ward, in kind, of securities in the hands of the guardian: Falconer's Est., 11 Pa. C. C. R. 354.

There was no abuse of discretion by the court in ordering distribution in kind.

The testator, by giving to Samuel Dempster as guardian the sole and exclusive management of the ward's estate, vested in him an absolute discretion as to the character of the securities in which the funds of the estate would be invested; and in the absence of fraud or gross negligence his judgment is not subject to control, nor is he liable for loss: Barker's Est., 159 Pa. 518; Detre's Est., 273 Pa. 341; Glassburner's Est., 40 Pa. Superior Ct. 134; Dauler's Est., 247 Pa. 356.

The use of the words "other securities" in connection with the investment of proceeds of sales, shows an intention not to limit the guardan to investments in so-called legal securities.

The investment or retention of a so-called nonlegal security is not of itself illegal or a breach of trust: Darlington's Est., 245 Pa. 212.

The finding of the auditing judge and the court in banc that there was no market for the Gilmore Drug Company stock since Morris Dempster's death and that the guardian was unable to sell it, is fully supported by the uncontradicted evidence: Culbertson's Est., 301 Pa. 438.

The finding of the orphans' court that the ward's estate sustained no loss is likewise fully supported by the testimony: Bradley's App., 89 Pa. 514; During, King and Miller's Apps., 13 Pa. 224.

Dempster personally was a large holder of Gilmore Drug Company stock and he fully complied with the requirements of the law by giving to the ward's stock precisely the same care and attention as that given to his own personal holdings: Detre's Est., 273 Pa. 341; Kline's Est., 280 Pa. 41; Brown's Est., 287 Pa. 499.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1932:

The controlling question in this proceeding is whether the orphans' court properly decided that the appellant, Mary Wood Dempster, must receive from her guardian, Samuel Dempster, in final settlement with him, 427 shares of the capital stock of the W. J. Gilmore Drug Company. If this determination was correct, it is admitted by appellant that other items of attempted surcharge, consisting of counsel fees paid by the guardian and expenses incurred by him need not be considered.

Mary Wood Dempster is the only child of David Morrison Dempster. He was a brother of appellee. For many years before the death of the former, the two had been associated in carrying on the business of the drug company, in which the decedent owned 1,280 shares and appellee 4,139 shares out of a total issue of 8,500. Decedent died December 6, 1918. His will is dated December 3, 1918. After giving his residence and its contents to his wife, he divided his remaining property two-thirds to his wife and one-third to his daughter. He named the appellee testamentary guardian of his daughter in the following language: "Sixth. I name, constitute and appoint my brother, Samuel Dempster, guardian of my said daughter Mary Wood Dempster, and direct that he shall have the sole and exclusive management of her estate, with full power and authority to sell or dispose of the same and invest the proceeds of any sale in other securities,—the said guardian not to be required to give bond as such guardian." Appellee and decedent's widow were appointed executors. On distribution of the estate of David M. Dempster, appellee as

guardian of appellant received the 427 shares of Gilmore Drug Company stock, being one-third of the 1,280 shares of which the decedent died possessed. Appellee, in accepting them as part of the distributive share due his ward, acted under the advice of competent counsel.

Protesting against taking these shares in final settlement with her guardian, appellant contends that he should not have continued to hold them, but that they should have been sold, that in the eleven years since he received them from her father's estate, they have declined in value, during which time the appellee has been in control of the corporation, that no dividends have been paid on them for six years, that the company has an unfavorable business future, that the guardian attempted to defraud the company of a large sum of money and was prevented from doing so only by decree of this court (Gilmore v. Gilmore Drug Co., 279 Pa. 193) and that he should be surcharged for the loss in value of the stock based upon its worth at the time he received it, which appellant estimates at something in excess of $200 per share.

It could not be successfully argued that the guardian was at fault in the first instance in accepting the stock as part of his ward's distributive share of her father's estate, acting as he did in good faith on the advice of reputable counsel. As we understand, appellant's able advocate who presented the case before us does not controvert this position. His contention is that the guardian's liability arises out of his holding onto the stock and not selling it. Where a guardian or other fiduciary acts in good faith, under the advice of a competent lawyer, he is not liable for mistakes of law, if such there be, or for errors in judgment: During's App., 13 Pa. 224 (GIBSON, C. J.) ; Bradley's App., 89 Pa. 514; Kline's Est., 280 Pa. 41. This is particularly true where a fiduciary employs the same attorney as served the decedent, which is the case here.

We therefore come to appellant's main cause of complaint, that her guardian did not sell the stock, and that she should not be compelled to take it. The court awarded it to her at the inventory value at which the guardian received it, $87 per share, a total of $37,149.

What powers were conferred upon the guardian over the estate of his ward by the will of her father? Were they such as to warrant his holding the security which he had received from the decedent? We are of opinion they were. He was given "the sole and exclusive management of her estate." No one else was to have any say in its control or disposition while in his hands. He alone was to manage it; so her father provided. By the language he used, he set the guardian's judgment up as supreme in the conduct of her affairs, so long as he acted in good faith and was not negligent. As was said by the court below in its opinion, "To him, sole and exclusive management, without direction to sell, and without bond, meant a discretionary control without judicial or other interference so long as he acted honestly and without negligence. Morrison [the decedent] knew his brother's ability and honesty and trusted him in all circumstances." In Detre's Est., 273 Pa. 341, we said that where a trustee is clothed with discretionary powers (and, as we view the guardian's powers in the case before us, they were of a very broad character so far as discretion is concerned) as to investments, neither the state constitutional provision as to trust funds nor the rule as to legal investments applies. We further said in that case, at page 350, that all that is required of a trustee "is common skill, common prudence and common caution, and he is not liable when he acts in good faith as others do with their own property [which is the case here]......a trustee will not be held personally liable for an honest exercise of a discretionary power, in the absence of supine negligence or wilful default."

The duty of a fiduciary with respect to securities non-legal in character which he receives from an estate in the

shape of investments made by the decedent during his life is set forth in the cases of Taylor's Est., 277 Pa. 518, and Brown's Est., 287 Pa. 499. It is clear that the limitations imposed upon the fiduciary in such case are far less drastic than when he makes the original investment himself. As stated by former Chief Justice MOSCHZIS-KER, in Taylor's Est., at page 528, "each case where a trustee retains unauthorized securities, purchased by his decedent, must be judged to a certain degree by its own peculiar facts, and the hard and fast rule, restricting original investments by trustees, does not apply with imperative force;......[the trustee] may be held liable for a failure of due care, unless he shows that his retention of the securities in question represents, not a mere lack of attention, but the honest exercise of judgment based on actual consideration of existing conditions; in other words, he is expected to be ordinarily watchful and to exercise normally good judgment." This statement of the law was reaffirmed in Brown's Est., supra, where the executor had held nonlegal securities, originally purchased by the testator, for fourteen years after the latter's death. It is true that the ground expressly stated for this court's refusal to surcharge the executor in that case was the agreement of the heirs and parties in interest, including appellant, to retain the investment. But the court stated the principles which should in the future govern the conduct of fiduciaries in the management of estates of this kind. The rule requiring the fiduciary to convert nonlegal investments within a reasonable time, it was said, is not intended to hamper the control and management of trust estates, or to compel an immediate conversion at considerable loss to the estate; and where the securities in question have no open market, reasonable latitude must be accorded the fiduciary in disposing of the property. "The judgment of a fiduciary acting in good faith on considered circumstances should have controlling effect as to the time of sale of the particular investment...... In this class of cases it is

obvious that each case must stand largely on its own facts:" Brown's Est., at page 503. In the present instance the trial court found there was not the slightest fraud or negligence proved; that there has never been any market for the stock, and that it is not now salable; this was wholly in accord with the testimony. The investment paid ample dividends up until 1926, when a large portion of the surplus was devoted to the construction of a new building to house the business. At the most, this venture on the part of the drug company could be considered only an error in judgment, as the lower court considered it. When all these facts are viewed in connection with the provision in testator's will conferring upon the guardian "sole and exclusive management" of the ward's estate, which amounted to a large degree of discretionary control, the conclusion must be that the guardian in the case at bar cannot be brought within the rule which would surcharge him for the amount which appellant alleges, but fails to prove, has been lost by retention of the stock.

Taking a look backward over the business situation which the drug company has had to meet, it may be that appellant would have been advantaged had appellee sold her stocks, but he has given the best evidence that he was endeavoring to safeguard her interests in the same way as he looked after his own, because during the time he held hers he did not dispose of any of his own. It is of some significance that her mother, who is not on good terms with the appellee, and who owns by virtue of her husband's will twice as much stock as her daughter, has not sold any of it, nor have the other stockholders. This would afford some basis for the conclusion either that it is regarded as a good investment or is unsalable. Appellant offered no evidence whatever of market value at any time. The guardian testified that he could not have disposed of the stock; that there were no buyers for it. This can be readily understood when account is taken of the fact that the drug company is a

private corporation, all of its stock being held by three families except a comparatively few shares owned by employees of the concern. Outsiders would not want to buy into such an enterprise. The only shares which have been purchased have been bought by appellee to protect the company from interests which desired to use the corporation for unlawful purposes. The court found as a fact upon sufficient evidence that the stock could not have been sold and no testimony was produced by appellant to gainsay this conclusion. What was said by us in Dauler's Est., 247 Pa. 356, 360, where the court below surcharged an executor because of failure to sell certain stock, and we reversed, may be appropriately repeated here: "How can it be justly said under a rule of law which requires common skill, common prudence and common caution, that the executors were grossly negligent because of their failure to sell the bank stock in question under the facts disclosed by the present record? The testimony shows that there was no market for bank stocks in that community during the period this particular stock was held by the executor."

We think the position assumed by appellant's counsel that the orphans' court was without authority to decree distribution in kind against the ward's objection is met and overthrown by the language of the Fiduciaries Act of June 7, 1917, P. L. 447, section 49, which provides: "(e) 1. Whenever it shall appear, at the audit and distribution of an estate in the orphans' court, that the balance, after payment of debts, includes stocks, bonds, or other securities, which, for reasons satisfactory to said court, have not been converted by the accountants, it shall be lawful for said court to direct distribution of such assets in kind, to and among those lawfully entitled thereto, including fiduciaries." The reasons given by appellee for not converting the stock were satisfactory to the orphans' court, and this being so, the act amply warranted it in decreeing distribution to the appellant in kind. Weir's Est., 251 Pa. 499, much relied upon by

appellant, is not on its facts a parallel case to the one at bar. There, a trustee had been appointed to hold property consisting of cash in hand on the petition of a life tenant where the life tenant had refused to give security for the protection of the remainder interests and it was held that such a trustee is answerable to the remaindermen upon the termination of the life estate, just as the life tenants' estate would have been; that the trustee must pay over to the remaindermen the whole fund he received in cash, and cannot compel the latter to receive, in lieu of cash, property in which the trust funds have been invested. The relation of the parties, where one is a life tenant and the others are remaindermen, is that of debtor and creditor: Letterle's Est., 248 Pa. 95; Loewer's Est., 263 Pa. 517; Kirkpatrick's Est., 284 Pa. 583. Furthermore, the rule laid down in Weir's Estate was subsequently changed by section 23 of the Fiduciaries Act of June 7, 1917, P. L. 447. Simpson's Est., 253 Pa. 217, also cited by appellant, concerned the trust of a sum of money to pay the income to a niece of the decedent for life with remainder to her children. A substituted trustee applied to the court for leave to purchase out of the funds in its hands a property which was to be used as a dwelling for the life tenant, and the investment was authorized. On the death of the life tenant, the remaindermen refused to accept the property and it was held, under the peculiar facts presented, that they were not obliged to do so, on the ground that the remaindermen, who had had no notice of the decree allowing the purchase of the property were not bound by it.

The case at bar differs from Wood's Est., 247 Pa. 478, in which a ward refused to accept in specie from her guardian real estate which the guardian had purchased. Here the stock was not purchased by the guardian, but was an investment made by his ward's father. It is further contended by appellant that the section of the Act of 1917, above quoted, relates only to primary distribution upon the estate of the original decedent and that

the orphans' court's right to award distribution in kind of unconverted, nonlegal securities is confined to such original distribution. In our opinion this is too narrow a reading of the act and it covers such a situation as that before us. What was done here was substantially the same kind of award as was made by the orphans' court in Brooks' Est., 249 Pa. 66.

Nor do we think, as argued by appellant, that the order of the court was an abuse of discretion. When the whole situation which confronted the guardian is taken into account, the fact that he acted with his ward's stock in precisely the same way as he did with his own, and the terms of the will appointing him guardian are considered, it cannot be said that he acted negligently or unwisely in not selling it.

It is contended by appellant that if she is to be required to accept the stock in kind, the guardian should be surcharged with its decline in value. Under the findings of the court below, that there was no improper conduct on the part of the guardian in carrying the investment, we think this position not maintainable. This is not a case where the guardian made nonlegal investments, as in Taylor's Est., 277 Pa. 518. Here he received the investment from his ward's father's estate as part of her share. In view of the broad powers conferred upon the guardian by the will, his conclusion, in the absence of evidence that it was improperly or negligently reached, is controlling so far as retaining the investment is concerned, and he should not be required to make up a decrease in its value, if such there be. The court below found as a fact not only that no loss was actually sustained by reason of the guardian's holding the stock, but, on the other hand, that it had increased in value. Findings by the orphans' court are conclusive upon us when based upon sufficient evidence: Culbertson's Est., 301 Pa. 438, 443. In the view we take of the controversy, the decision in Gilmore v. Gilmore Drug Co., 279 Pa. 193, has no bearing upon it.

The decree is affirmed at appellant's cost.