## Reinhard's Estate.

Argued April 27, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert T. McCracken,* with him *Laurence H. Eldredge* and *Taylor, Schrader & Riskin,* for appellant.

*Lewis R. Long,* for appellee.

OPINION BY MR. JUSTICE LINN, May 25, 1936:

Decedent died August 13, 1929. The beneficiary became of age in August, 1932, and at his request the trustee filed its account June 1, 1934. He excepted and asked that the trustee be surcharged with the difference between the appraised value of certain stocks and bonds and the value at the time of accounting. The investments had been made by decedent and remained in the possession of the accountant, pending sale. On the report of an auditor, all the exceptions were dismissed but one, that complaining of the retention of 160 shares (par $10) of the capital stock of Lehigh Valley National Bank, a bank engaged in business in Bethlehem where decedent resided at the time of his death and where the beneficiary resides. The amount of the surcharge is $4,000. The trustee appeals.

The burden of proving due diligence was on the trustee. The evidence does not warrant the surcharge. The bank stock passed to accountant as trustee, on the final confirmation of the executor's account July 29, 1930. The bank failed July 4, 1932. The inquiry is, What had the trustee done to dispose of the investment in that period of slightly less than two years before the bank failure? One of the accountant's officers testified that in 1930 he requested York, a broker in Allentown, who dealt in such stocks, "to try to dispose of the 160 shares"; that accountant had "an offer standing to sell for us with W. W. York & Co.";* the stock was not sold because "there was no market for them." Accountant also got "in touch with the corporation," that is, the bank itself, for the purpose of making a sale. The witness testified that the "Bank stock paid dividends [10%] up to 1932"; in January, 1932, "it declared a four per cent dividend, and in July, 1932, a five per cent dividend." No offer for the stock was ever received from the broker or from anyone else. The evidence of value, if any, at the time of the hearing, was indefinite. It is perhaps not surprising that no offer was received for the stock after the failure of the bank in July, 1932.

Our difference from the learned court below is in the legal effect of the facts. A fair inference from the record is that during the period in question there was no market for the sale of this bank stock. The trustee cannot be surcharged for not selling something that nobody would buy. The only evidence offered on behalf of the beneficiary consisted of statements made by the liquidating agent of the bank based on the stock transfer book.

---

* "Q. That is the only person or brokerage house you asked to sell these securities? A. That is the only local brokerage house we deal with outside of making personal efforts, which method had been practiced in the bank for all of my thirty-eight years of life with the First National Bank. When there is no open market to dispose of any stock, it is invariably considered wise to get in touch with the corporation and list it."

While this evidence shows transfers of certificates, it does not indicate whether they were the result of sales or to effectuate distribution, exchange, or reissue in other circumstances. If we ask what the trustee omitted that a diligent person would have done, the record furnishes no answer. Perhaps the only alternative, to what was done, was to offer the stock at public sale, but the record shows no reason to expect that such a course would have obtained a purchaser at a fair price if neither the bank itself, nor the broker found anyone interested. It may very well be that this resulted from knowledge of the people in the community of the condition of the bank's business, notwithstanding the dividend record. But the accountant appears to have done all that was possible; it tried to sell the stock.

In *Taylor's Est.*, 277 Pa. 518, 528, 121 A. 310, the general rule was stated to be ". . . that when a trustee continues to possess such nonlegal investments after a time when he could properly dispose of them, and a loss occurs, he may be held liable for a failure of due care, unless he shows that his retention of the securities in question represents, not a mere lack of attention, but the honest exercise of judgment based on actual consideration of existing conditions; in other words, he is expected to be ordinarily watchful and to exercise normally good judgment." In *Brown's Est.*, 287 Pa. 499, 502, 135 A. 112, we said: "In considering the sale of investments that have no open market, or bonds in a depressed market, or stock whose intrinsic value is established, paying dividends equal to and above what would be a normal interest rate, reasonable latitude, according to the circumstances, must be allowed a fiduciary in the disposition of such property." See also *Dempster's Est.*, 308 Pa. 153, 162 A. 447.

Decree reversed, costs to be paid out of the fund for distribution.