## Nola's Estate

*George Maxman* of *DiSilvestro & Maxman*, for exceptant.

*W. Albert Sanders* and *Harry Donnelly*, contra.

KLEIN, J., December 10, 1937. — Testatrix died on January 7, 1926. Her husband died on June 12th of the same year. By her will she provided as follows:

"Upon the death of my said husband, I order and direct that all the real estate of which I may die seized, it be not already converted into personalty and the proceeds in the hands of the Real Estate Title Insurance and Trust Company of Philadelphia, that it be then converted by said Company and the proceeds, after defraying the necessary expenses shall be turned over in the 'Gran Libro Del Debito Pubblico Del Regno D'Italia' (the public Debt of the Kingdom of Italy) to hold such investment in trust to collect the income thereof and to pay the same after defraying of necessary expenses to the 'Ospizio De X Mendicita' (The Home for the Indigents) at Porta Sant' Anna in the City of Chieti, Abruzzi, Italy, forever, the maintenance of the institution and the carrying out of the charitable purpose for which it was founded."

At the death of the husband the estate owned one piece of real estate situate at 1154 East Passyunk Avenue, in the City of Philadelphia. A sale was arranged for this property on October 6, 1927, and a deposit of $200 received on account of the purchase price. The purchaser refused to complete the transaction and forfeited his deposit. On January 15, 1930, another sale for the property was arranged, subject to a purchase money mortgage of $3,000. Default was made in the terms of the mortgage and the estate took over the property by foreclosure. Subsequently the property was redeemed by the owner through the Home Owners' Loan Corporation, resulting in a loss to the estate.

At the audit counsel appeared for the Royal Italian Consul General acting for the Italian charity. He contended that the trustee should be surcharged for the loss sustained by this transaction because it failed to comply with the mandatory provision in the will to convert this real estate into cash. The auditing judge refused to enter

this surcharge, as the result of which these exceptions were filed.

The same principles of law laid down in cases in which fiduciaries retain nonlegal investments without specific authority may by analogy be applied to the present case. In both situations a duty is fixed upon the fiduciary to dispose of an asset, whether it be real estate or personalty, within a reasonable time. The determination of what constitutes a reasonable period of retention depends upon the facts and circumstances of each individual case. If the fiduciary continues to hold the asset after a time when he should properly have sold it, and a loss results, he will be held liable therefor unless he can show that the retention was the result not of a mere lack of attention but of an honest exercise of judgment based on actual consideration of existing conditions: Taylor's Estate, 277 Pa. 518 (1923).

In Brown's Estate, 287 Pa. 499 (1926), Chief Justice Kephart, after discussing the rule set forth in Taylor's Estate, supra, said at p. 502:

"This rule was not intended to hamper fiduciaries in the control and management of estates. They need not rush into a conversion of the securities left by the decedent and, under the whip of the law, sell them below what they might normally expect to receive for them, thus causing an estate to shrink out of all proportion to any possible benefit that might arise through a strict application of the rule. One may readily see how too literal enforcement of the rule could be taken advantage of. In considering the sale of investments that have no open market, or bonds in a depressed market, or stock whose intrinsic value is established, paying dividends equal to and above what would be a normal interest rate, reasonable latitude, according to the circumstances, must be allowed a fiduciary in the disposition of such property."

We cannot agree with the contention of able counsel for the exceptant that the trustee was under obligation to sell the real estate *for cash* immediately after the hus-

band's death. Few private sales of real estate are made in this city in which the entire purchase money is paid in cash. In most cases the sale is financed by a mortgage either taken by the seller or some outside party. This was especially true at the time the trustee was in charge of this real estate. To have made a public sale at that time would almost certainly have resulted in a sacrifice of the asset. It is common knowledge that hundreds of properties, regardless of their values, were then being "knocked down" by the sheriff to the attorneys on the writs for costs without bids of any kind being received.

The disposal of real estate at a fair price in times of depression presents a serious problem. Even if the property is rented and produces income, mere assumption of title may incur serious responsibilities. Purchasers are therefore difficult to find and when one appears the trustee is duty bound not to permit him to escape.

In the present case the trustee effected not one sale but two. It is unfortunate that the first purchaser forfeited his deposit and the second defaulted on the purchase money mortgage, resulting in a loss to the estate. The trustee, however, cannot be held responsible for these occurrences. The testimony fully supports its contention that it was not remiss in its management of this property.

The charges made in the third exception that the conclusions of the auditing judge are inconsistent because he ruled that the cash in the estate should have been invested in Italian bonds, but failed to require the trustee to convert the real estate into cash so that it could be similarly invested, are without merit. The auditing judge properly and logically decided that the cash in the hands of the trustee must be invested in Italian bonds as specified and required by the will. But this ruling did not apply to the real estate until it was actually converted into cash. Until cash was realized the direction contained in the will did not apply.

Negligence in cases involving the management of real estate is a mixed question of law and fact, and we are

**116**

always loath to set aside the conclusion of an auditing judge with regard thereto, except in cases of manifest error: Goldman's Estate, 19 D. & C. 65 (1933). And we repeat again what has been so often said, that the findings of fact by the auditing judge, when supported by evidence or reasonable inferences therefrom, have the effect of a verdict of a jury, especially if the decision depends upon the testimony of witnesses whom the trial judge saw and heard: Jacobs' Trust Estate, 320 Pa. 539 (1936); Boyd's Estate, 315 Pa. 283 (1934); Kahle's Estate, 307 Pa. 212 (1932); Kovacevich's Estate, 309 Pa. 268 (1932).

The exceptant has taken a single statement of one of the witnesses for the accountant and stressed it out of all proportion to its relation to the rest of the testimony. In order to reach a fair conclusion in a case of this character, it is necessary to study the testimony of all the witnesses and to examine the record from its four corners. We have made such a careful review of the entire case and we reach the conclusion that the evidence fully justifies the findings and conclusions of the learned auditing judge refusing to surcharge the trustee.

The exceptions are therefore dismissed and the adjudication confirmed absolutely.