## Linnard's Estate.

The facts appear from the following adjudication of

STEARNE, J., Auditing Judge.—The trust in this estate arose under the third or residuary clause of the will of the decedent, George B. Linnard, who died December 14, 1919, wherein he gave his residuary estate to his trustee for the uses and purposes as hereinafter more particularly set forth. . . .

Application is made to surcharge the trustee for losses sustained in certain of the securities composing part of the trust estate. Such loss, it is alleged, was occasioned by undue retention by the trustee. Irrespective of the provisions of the will, which relieve this fiduciary from disposing of such securities within a reasonable time, it is claimed that the trustee, by ordinary watchfulness, could have secured knowledge which would have rendered the retention of such securities contrary to ordinarily good business judgment or foresight.

Despite the decision of the Supreme Court in this case, 299 Pa. 32, demand is renewed that all losses, including those sustained during the executorship, be considered.

Decedent died December 14, 1919. His will was dated May 18, 1917. He left surviving a widow and two minor daughters. By the terms of the will the entire estate was bequeathed to the present accountant, in trust, to pay the net income to his widow for life, and at her death to his living children, with remainder to their issue, and in case of the death of a child without issue and without having made appointment by will, with limitations over as therein recited. The widow and Girard Trust Company were appointed executors, and Girard Trust Company, the present accountant, was named as sole trustee. The widow was appointed testamentary guardian of the two minor children.

The provisions of the will relating to the retention of securities read as follows:

"Fourth: I desire and direct that Girard Trust Company may at its discretion retain for permanent investment any securities of which my estate may be possessed at the time of my decease. . . .

"Fifth: I also authorize my Trustee if deemed expedient to continue to hold any stock or bonds of which I may die possessed or to sell the same when in the Trustee's judgment the same shall seem proper."

Letters testamentary were granted by the register of wills to the widow and Girard Trust Company as executors on December 22, 1919. An inventory was thereafter duly filed, and in due course the executors prepared and filed their account, which was subsequently audited by Judge Gummey, whose adjudication was confirmed absolutely on June 29, 1921.

It suffices to say that the entire balance shown by the account, composed, inter alia, of the securities in question at their appraisal value, was awarded to the present accountant as sole trustee as directed by the will.

On February 21, 1929, the present account was filed and the same came before us for audit. Claim was made to surcharge the accountant, inter alia, for losses and shrinkage in securities occurring up to and including June 29, 1921. I declined to receive such testimony, because, if successful, its effect would be to modify and affect an adjudication which already had been confirmed absolutely for over eight years. A continuance was requested and allowed. A bill of review was thereafter filed, and upon filing of an answer, the court in banc declined to allow a review of Judge Gummey's adjudication. Upon appeal, this decision was affirmed by the Supreme Court (Linnard's Estate, 299 Pa. 32).

Counsel for exceptants, again renewing his application for a surcharge for loss covering the period up to and including the date of the absolute confirmation of the executors' account, states frankly in his brief:

"Counsel for the exceptants makes no pretence of concealing his purpose of endeavoring to have the trustee surcharged on the evidence presented at the audit, notwithstanding the adjudication of Judge Gummey and the opinion of the Supreme Court in affirming the action of the orphans' court in dismissing the petition for a review."

And, again:

"On mature consideration, counsel believes that the resort to petition for a bill of review was a mistaken course, as there was nothing in the adjudication of Judge Gummey in awarding to the Girard Trust Company, trustee, all securities at the price at which they had them appraised as executor, which precluded the exceptants from calling upon the trustee to sustain any credit or depreciation that would make the value of securities taken over by it as trustee different than asserted by it as executor and accepted by it in the capacity of trustee.

"The position of the exceptants now is, that the adjudication of Judge Gummey was really in favor of the beneficiaries, and, having been brought about by the action of the Girard Trust Company, should stand as a charge against the trustee until, in a proper proceeding, it has relieved itself from the prima facie legal effect of assuming the liability for the securities as of the value set forth in the adjudication; and counsel for the beneficiaries contend that they are in the same position now as though the original audit had been proceeded with and the trustee had assumed the burden of explaining and discharging itself from the values at which the adjudication of Judge Gummey charged it. The court is now asked to consider the case as though the evidence which is now before it had been offered at the original hearing of the audit of the trustee's account and no petition for a bill of review had been filed."

I am unwilling to accede to such demand. As pointed out by the learned Chief Justice who wrote the opinion for the Supreme Court:

"Appellants make much of the fact that the depreciation in the securities in question was not marked off till the trustee filed its account in February, 1929; but this was a mere matter of bookkeeping, and appellants frankly admit, as the facts of the case compel them to do, that the depreciation occurred while the securities were in the hands of the executors prior to the day they were turned over to the trustee, nearly eight years before the trustee filed its account. At all times from the beginning, Mary A. Linnard, in her own right and as guardian, knew of the continuing investment in these securities, and the fact that they were carried by the executors and turned over to the trustee at the appraised values is not at all unusual; finally, the revaluing of them, for bookkeeping purposes, by the trustee, when it filed its account, cannot change the fact of the date of the depreciation, nor, in the absence of a specific averment of facts showing actual deception or misleading of appellants, can such revaluation confer any new rights on appellants, which they would not otherwise have possessed."

The record is barren of the slightest evidence of deception or misleading. Upon the contrary, the retention of all securities up to and including the date of the final confirmation of the executors' account (during which period the major losses occurred) was with the active concurrence and knowledge of Mrs. Linnard—a coexecutor, the life tenant and testamentary guardian of her two minor children.

I, therefore, rule, in the circumstances, that there can be no surcharge for any loss up to and including June 29, 1921, when the fund was awarded to the accountant as sole trustee.

The claim to surcharge relates to the following items:

(1) Full loss on the Island Refining bonds at the appraised value; (2) loss on the Pierce Oil stock, with alternative that the trustee be compelled to take the 400 shares over at the valuation of $74 per share at the lowest; (3) full loss on East Coast Fisheries Products Company; (4) full loss on The Oil & Waste Saving Machine Company; (5) full loss on American Sumatra Tobacco Company.

I have carefully considered the duties and liabilities of a trustee as to retention of unauthorized investments. Taylor's Estate, 277 Pa. 518, is the leading authority upon the subject. The general rule is (p. 528) that a fiduciary has no right to retain beyond a reasonable period investments made by the decedent in unauthorized securities, *unless specially empowered so to do.*

In the instant case, the Supreme Court decided (Linnard's Estate, 299 Pa. 32, p. 37): ". . . testator, by permitting the trustee thereunder to retain for permanent investment such stocks, bonds and other securities as he, testator, might possess at the time of his death, *impliedly relieved* his *executors* from the obligation, which might otherwise have rested on them, to dispose, within a reasonable time and before turning the estate over to the trustee, of all nonlegal securities which had come into their hands." (Italics ours.)

The trustee, however, was *expressly relieved* by the language of the will from the aforesaid obligation.

This exemption, I take it, is absolute (p. 37) "unless facts known to them [i. e., trustees], or which by ordinary watchfulness could have been known to them, rendered the holding of such securities an act of which it is inconceivable that one desiring to do his duty would, in the exercise of 'ordinary good business judgment or foresight,' have been guilty."

As Mr. Justice Kephart wrote in Brown's Estate, 287 Pa. 499, in considering the liability of a fiduciary who retained stock without special testamentary

authorization, and which is equally applicable to the present consideration (p. 503): "The rule is, What would a prudent man ordinarily do if a similar situation confronted the disposition of his personal affairs?"

I, therefore, rule that because this trustee possessed testamentary authorization to retain as permanent investments all stocks and bonds owned by the decedent at the time of his death, in order to establish liability it must be proven by the exceptants that the trustee was guilty of a lack of ordinary good business judgment or foresight in continuing such securities in the trust.

Before considering the specific securities now involved attention should be given to the general character of the estate and the financial situation with which the fiduciary was confronted.

Decedent, according to the testimony, was a lawyer, but was engaged in the banking and investment business. Manifestly, at the time of his death, he was building an estate. His investments reflect careful thought and sagacity. Portions of his estate were invested in safe and conservative bonds and stocks; other parts in securities of sound, but less stable security, but excellent dividend payers—and the remainder in speculative securities with large dividend-yielding records.

Reflected in the testimony, but not relevant in the present inquiry, was the effort of the executors to maintain the high rate of income, but at the same time to conserve the principal. No action was ever taken without the full knowledge and coöperation of Mrs. Linnard, the widow and testamentary guardian of the children, and of Mr. Audenried, the brother of Mrs. Linnard, an experienced dealer in securities and a part of the organization of a prominent investment house.

At the time of the ending of the executorship and the commencement of the trusteeship, June, 1921, the country was in the midst of a financial depression. It called for the exercise of extraordinary care and consideration.

By the cross-examination of the officers of the fiduciary it was sought to establish that there was a total lack of investigation and consideration given to securities in question. In short, it was contended that the policy of the trustee was to allow matters to drift, and that only when the corporations got into trouble and ceased paying dividends or interest, the fiduciary would act, and that then it was too late to save the security.

However, upon a careful review of the entire evidence, I am unable so to find. All of the securities received careful consideration and deliberation. During the executorship the value of the securities had shrunk greatly. During the trusteeship the fiduciary marketed a number of the securities at substantial gains, others were sold at a loss, while some have been retained because of no market for them.

Taking the testimony as a whole, I find that this trustee, under all the circumstances, and with the full knowledge, approval and concurrence of the sole party in interest, did nothing more or less than a prudent man would ordinarily do if a similar situation confronted the disposition of his personal affairs.

Reverting to the specific securities in question:

### 1. Island Refining Bonds.

There was awarded to the accountant, as trustee, $20,000 Island Refining Corporation bonds, 7 per cent. @ 89, $17,800.

These bonds were purchased by the decedent and formed part of his estate at his death. While the testimony may be conflicting as to the considerations which determined the conclusion to retain these bonds, yet the evidence is uncontradicted that the corporation continued to pay its coupons up to and

including October 15, 1921. The April, 1922, coupons were paid in scrip instead of cash, and the scrip was paid at its maturity on October 1, 1922, but interest coupons were defaulted. The corporation went into the hands of a receiver in January, 1923, and a bondholders' committee now has charge of all the assets. Of course, the desire of the life tenant to retain the security for the purpose of inflating her income would not relieve the trustee from liability should it be affirmatively shown that it was a breach of good business judgment to continue a precarious investment. It is undisputed that the trustee was not satisfied with the soundness of the investment, but, upon the other hand, at no time after the trustee's administration began was there ever a market for the bonds. The trustee endeavored to dispose of the bonds without success. The evidence seems clear that the officers of the trustee gave the retention of this security careful consideration. They desired and endeavored to sell, but could not, except at an undue sacrifice. Bearing in mind the discretion vested in them by the decedent, and there being no evidence to sustain a careless or negligent consideration, the decision of the trustee to retain, even though subsequent events disclosed a mistaken judgment, should not subject it to a surcharge. I decline so to surcharge.

### 2. Pierce Oil Stocks.

Decedent owned 400 shares of Pierce Oil Corporation (a former subsidiary of the Standard Oil Company) 8 per cent. cumulative convertible preferred stock, par $100, inventoried at $101 per share, $40,400, and which were so awarded to the trustee.

When the trustee took possession, its value had receded to $64 per share. The trustee had thoroughly investigated the company, and while the decedent had great confidence in it, and satisfactory dividends continued to be paid during the executorship (and well into the trusteeship), the trustee concluded, after full conference with Mrs. Linnard and her brother (a stockbroker by the name of Wm. G. Audenried, Jr.) to sell 100 shares at $64 per share. An order was placed in October, 1922, to sell at this figure, but could not be executed. A careful consideration of the testimony reveals no negligence or carelessness nor abuse of discretion in this matter. I, therefore, decline to surcharge.

### 3. East Coast Fisheries Company.

As it is undisputed that whatever loss was here sustained occurred during the executorship, and prior to the commencement of the trusteeship, I decline to surcharge.

### 4. Oil and Waste Saving Machine Company.

Decedent possessed twenty shares Oil and Waste Saving Machine Company, par $100, appraised at $50, total $1000, and which were so awarded to the trustee.

Dividends at $80 per annum were regularly paid up to April, 1929, inclusive. Efforts by the trustee to sell have been without success. There has been no market for the stock. Since no negligence whatever is chargeable against the trustee, I decline to surcharge.

### 5. American Sumatra Tobacco Company.

Decedent owned 100 shares of American Sumatra Tobacco Company, preferred, par $100, appraised at 92, total $9200.

When the trusteeship commenced, the conceded value of this stock had declined to $78.50 per share. In 1927 it was sold at $6291, at a loss of $1350, for which a surcharge is claimed.

While it is charged that there was no investigation of the affairs of the company until after the dividend had been passed and the company was in financial difficulty, I do not think that the testimony, taken as a whole, warrants such conclusion. I find nothing in the testimony to warrant a surcharge upon this item. . . .

*Fred J. Shoyer*, for exceptant; *A. H. Wintersteen*, contra.

GEST, J., November 20, 1931.—The testator, who died in 1919, bequeathed his estate to Girard Trust Company, in trust to pay the income to his wife (the present exceptant) for her life, with remainder at her death in trust to pay the income to his living children for their lives, with remainder to their issue, and with limitations over in default of issue. He appointed his wife and Girard Trust Company executors and his wife guardian of his two minor daughters, the elder of whom is now of age.

By his will he directed as follows: "Fourth I desire and *direct* that Girard Trust Company may at its discretion *retain for permanent investment* any securities of which my estate may be possessed at the time of my decease," and after provision for reinvestment not here material, he further directed: "Fifth, I also authorize my Trustee if deemed expedient to continue to hold any stocks or bonds of which I may die possessed or to sell the same when in the Trustee's judgment the same shall be proper."

The executors, being his wife, Mary A. Linnard, and Girard Trust Company, filed their account in 1921, charging themselves with the securities owned by the testator at their appraised valuations, and, by the adjudication of Gummey, J., confirmed absolutely on June 29, 1921, these securities were awarded to the trustee.

The present account of the trustee was filed on February 21, 1929, when Mary A. Linnard, widow, in her own right as life beneficiary and as guardian of her minor children, moved to surcharge the trustee with losses and shrinkage in value of the securities retained by it, including those losses incurred prior to June 29, 1921. The Auditing Judge, Stearne, J., declined to receive the testimony relating to the latter claim, as its effect would be to modify and affect the adjudication of the executors' account confirmed absolutely over eight years previously. A continuance was granted, a petition for review was filed, which was dismissed by the court in an opinion by Van Dusen, J., 12 D. & C. 297, and an appeal from this decree was dismissed by the Supreme Court in Linnard's Estate, 299 Pa. 32, for the reasons stated in the opinion of the Chief Justice, to which might have been added the additional reason afforded by the later case of Stetson's Estate, 305 Pa. 62, that after the lapse of five years, in the absence of fraud, there is no right of review under section forty-eight of the Fiduciaries Act of 1917.

The trustee's account being then again called for audit, voluminous testimony was presented, some of which related to the management of the estate during the period of administration, and much related to subsequent matters. The securities which were the subject of the testimony were all investments made by the testator, and many of them were of a highly speculative character, which were either sold at a loss or had greatly depreciated in value. The Auditing Judge carefully considered the testimony and summed up the case by saying: "Taking the testimony as a whole, I find that this trustee, under all the circumstances, and with the full knowledge, approval and concurrence of the sole party in interest [meaning thereby the life tenant, who was also guardian of her minor daughters], did nothing more or less than a

prudent man would ordinarily do if a similar situation confronted the disposition of his personal affairs."

Our examination of the testimony leads us to the conclusion that the Auditing Judge was correct in his decision. It will be observed that the testator not only authorized the trustee to hold his investments, but in the fourth paragraph of the will "desired and directed" the trustee to retain them "for permanent investment." This language is unusually strong, and the trustee would have undertaken a grave responsibility in selling these stocks and bonds which the testator had thus directed it to retain as permanent investments. Nothing short of gross abuse of discretion, it seems to us, would have justified a surcharge for losses incurred in obedience to the testator's express direction. Especially is this true when it is remembered that throughout its management of the estate the trust officer of Girard Trust Company was in constant consultation with the exceptant and her brother, who was a stockbroker. The exceptant testified that she was always consulted, and it repeatedly appears throughout the testimony that Mrs. Linnard, as life tenant, naturally desired as large an income as possible. The exceptant appears from the testimony and her own letters to be a woman of unusual intelligence and business ability, and she never, so far as we can find, expressed any dissatisfaction with the conduct of the trustee, while she did express her satisfaction with it when securities were advantageously sold, as did sometimes happen.

The trustee acted properly in consulting with Mrs. Linnard about the sale or retention of these stocks. The failure of a fiduciary to consult with the beneficiaries is a frequent occasion of friction and dissatisfaction, and strained relations between trustee and cestui que trust, giving rise to lack of confidence and sometimes leading to an application for the removal of the trustee. The trustee, indeed, cannot acquit himself of his responsibility by following the opinion of his cestui que trust, but if he does so, her subsequent criticism of his action comes with ill grace.

We would, therefore, dismiss the exceptions without further comment, but it is perhaps advisable to mention the claim for surcharge based on the depreciation in value of 100 shares of Galena Signal Oil Company, appraised at $106, or $10,600 (or taking its reappraised value as of May 31, 1920, $9000), which were sold May 2, 1927, at 38½, showing a net loss after debits of interest and credits of dividends, according to the report of a certified public accountant, of $4813.06. We mention this because this matter is not discussed in the adjudication, apparently for the reason that it was not argued before the Auditing Judge, though it was formally presented to the court in banc in the fourteenth exception to the adjudication. This company was a subsidiary of the Standard Oil Company of New Jersey and paid 8 per cent. dividends regularly after the testator's death, up to and including June 30, 1926. The next dividend was passed, the market value of the stock declined very rapidly, and in March, 1927, the trust officer suggested to Mrs. Linnard that the stock be sold. In the month following, Mrs. Linnard, with the concurrence of the trustee, authorized a broker of her own selection to sell the stock at the best figure he could get. It was accordingly sold at 38½, having been as low as 35, and Mrs. Linnard expressed no dissatisfaction with the sale.

This is only one of the frequent instances when hindsight is better than foresight. So far as the testimony shows, the trustee had no reason to suppose that the stock would prove unprofitable. In fact, it appears that the company did not follow the practice of publishing its earnings. It was said in Detre's Estate, 273 Pa. 341, 350, that "a trustee will not be held personally

liable for an honest exercise of a discretionary power, in the absence of supine negligence or wilful default."

All the exceptions are accordingly dismissed, and the adjudication is confirmed absolutely.