## Kelsey Estate

758

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

SHOYER, J., October 16, 1957.—This trust arises under deed of July 16, 1914, a copy of which is attached hereto, of A. Warren Kelsey, settlor, whereby he created a trust to pay the income to himself, for life, and upon his death, after the termination of the life interest he gave to his wife and an annuity to his sister, to pay the income in equal shares to his children, excluding his daughter, Bonnibel Kelsey, for whom provision was made under a separate trust. The deed provided that in the event of the death of any married child of settlor the income should be paid to the issue of the deceased married child, as more fully set forth in the deed. . . .

The trust continues. This is a partial account of an investment in 20 shares Philadelphia Electric Company common stock, to determine whether the trustee has power to invest in stocks.

The notice of the audit contained the following question:

"The question will be presented to the Court as to whether or not the trustee may invest in shares of common stock under Statutory Authority. The trustee takes the position that the investment of a fair percentage of the trust in legal common stocks is the best way to protect the interests not only of the life tenants, but also of the remaindermen."

The investment powers are set forth in paragraph eighth of the deed of trust, which reads in part:

"Upon any such sales being made the Trustee is hereby authorized and empowered to invest and re-invest the proceeds in bonds, mortgages and such other securities as to it shall seem proper, and to subscribe to any bonds or securities whether the same are or are not such investments as are by law defined or construed to be proper investments for trust funds, but in no event to be limited to the class of investments known as 'legal investments'; and upon any reorganization of any corporation whose bonds or securities are by this Instrument, or any Future Instrument, transferred to said Trustee, the said Trustee is hereby authorized in its absolute discretion, to join in any reorganization scheme and in furtherance of the same to accept stock of any existing corporations, or those hereafter to be created, but except to this extent, the power of investment of said Trustee shall not in any event include the right to invest in stocks, . . . ."

The ad litem states that of the investments in the main estate somewhat more than 25 percent is in mortgages, or $160,000, $19,000 invested in three bonds of private corporations, $8,800 in cash and the balance in government bonds.

It is the opinion of the auditing judge that the trust instrument, unequivocally, expressly restricts the trustee from investing in stock of any kind, whether or not the stock has all the other attributes that would otherwise qualify it as a "legal investment". This conclusion is forced not only from the plain language of the clause which provides: ". . . the power of investment of said Trustee *shall not in any event* include the right to invest in stocks . . .", but also results from a study of the four corners of the trust instrument. (Italics supplied.)

Settlor stated in the third paragraph of the preamble of the deed that he thought it "unnecessary and

undesirable" to give his children any portion of the principal of his trust because on the death of his wife the children would come into distributive shares from their maternal grandfather's estate. His children would then be amply provided. The schedule of the assets which is attached to the deed of trust does not contain one share of stock. He reserved the entire income to himself during his lifetime and, though he also reserved the power to revoke, he made no change, notwithstanding the inflationary period of his time.

In paragraph eighth of the deed he authorized the trustee to invest in bonds, mortgages and such other securities as to it shall seem proper without restricting the trustee to legal investments and in so far as the reorganization of any corporation whose bonds or securities are held in the trust, the trustee is authorized to join in any reorganization and in furtherance of same to accept stock, "but except to this extent, the power of investment of said Trustee shall not in any event include the right to invest in stocks . . .", and he then prohibited the investment in certain bonds and directed that 25 percent of the principal be kept invested in mortgages.

He, thus, clearly and unequivocally, restricted the trustee from investing in stocks. The fiduciary could, however, accept stock to protect an existing asset of the trust. To express first the solitary exception, then to follow it with the restriction "shall not in any event", is to provide a forceful rhetorical arrangement allowing for not the shadow of a doubt or ambiguity. The earlier "in no event" (relied on by accountant to modify and weaken the effect of the later clause), by contrast affords no such conclusive or decisive limitation.

The phrase "in no event" in the restriction clause is all-inclusive. It is in the singular, applicable to each event and is an "express restriction" embracing

not by implication, but by its simple meaning, *any* and *all* events including the event which by legislative act authorized fiduciaries to invest in certain instances in stocks. This same restriction is just as applicable to stocks which are issued by a new corporation as by a company that is 10 or more years old.

This settlor was just like many today who, with resources invested in the light of present economic conditions, are determined not to have a single share of stock and reject such investments in their estates.

That settlor's restriction was until 1955 meaningful to the trustee is evident by the fact that in the first 40 years of the trust there was no stock in the fund. Furthermore, though in 1938 our Superior Court in Wood's Estate, 130 Pa. Superior Ct. 397, held that an exoneration from "legal investments" permitted the trustee to invest in stocks (there being no restriction in the instrument), that decision and the decision of like tenor by our Supreme Court in McGraw's Estate, 337 Pa. 93 (1940), did not move the instant trustee to invest in stock during the ravages of the recent extended inflation. The conclusion is inevitable that settlor's "express restriction" against investment in stocks meant to the trustee what settlor intended it should, and as a consequence it adhered to settlor's mandate until October, 1955.

Scott on Trusts, §227.14, states the rule:

". . . The provisions of the trust instrument are binding upon the trustee, unless compliance is impossible or illegal, or unless there has been such a change in circumstances that compliance would defeat or substantially impair the accomplishment of the purposes of the trust.

"By the terms of the trust the trustee may be restricted to classes of investments narrower than those in which he would otherwise be permitted to invest.

In such a case the trustee commits a breach of trust if he invests in securities not permitted by the terms of the trust although they would otherwise be proper trust investments, and he can be surcharged for any loss that ensues."

If a fiduciary invests in unauthorized securities, it must be at his own risk: Commonwealth v. McConnell, 226 Pa. 244; Taylor's Estate, 277 Pa. 518.

Based on the principle that the propriety of an investment is determined as of the time the investment is made (Iscovitz's Estate, 319 Pa. 277, 280), it has been held that the several legislative acts which define "legal investments" are applicable to preëxisting trusts: Gillingham Estate, 353 Pa. 493 (1946); Drexel Trust, 1 Fiduc. Rep. 530; Close Estate, 83 D. & C. 136; Brown Estate, 85 D. & C. 452; Frazier Trust, 3 Fiduc. Rep. 399. However, each of the acts which define "legal investments" reserves the right to the trustor to exempt his trust from the applicability of the "legal investment" authorized by the legislature. Prior to 1949 the statutes which broadened the field of "legal investment" were adopted as amendments to the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 41, which provided in clause (a):

"Nothing contained in this section shall be construed to authorize any fiduciary to make any investment contrary to the directions in regard to investments contained in the . . . trust . . . instrument."

The Fiduciaries Investment Act of May 26, 1949, P. L. 1828, sec. 18, 20 PS §821.18, provides:

"The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or noninvestment of principal . . . and whenever any such provision shall conflict with this act, such provision shall control notwithstanding this act. In the absence, however, of an express restriction to the contrary in

the trust instrument, the fiduciary may invest in any investment authorized by this act."

The commission's comment to this section notes that there is no statutory precedent for this section but that it is declaratory of existing law. The last sentence being intended to make it possible for the fiduciary to make investments authorized by the act even though the instrument indicates that other investments shall be made.

Section 9 of the Fiduciaries Investment Act of May 26, 1949, 20 PS §821.9, authorized investment of trust funds in preferred stocks and by Act of August 24, 1951, P. L. 1410, 20 PS §821.9, amending the Act of 1949, authorized investment by trustees in common stocks which meet certain statutory requirements.

Since the passage of the above Act of 1951, numerous cases have been decided in the several orphans' courts which construe section 18 of the Investment Act, in all of which cases it was decided that the particular instrument in question did not contain an "express restriction" required by the act to prohibit investments authorized by the act. See, for example, Woolston Trust, 4 Fiduc. Rep. 141; Tower Estate, 87 D. & C. 447; Shannon Trust, 4 Fiduc. Rep. 554; Jenks' Estate (unreported), adjudication of Judge Hunter on November 2, 1953, Philadelphia Orphans' Court, no. 54, April term, 1909. None of these cases can control the instant matter.

In the Woolston Trust, supra, the will exonerated the trustee from being confined to "legal investments" and by a codicil to the will testator confirmed that power and provided that the trustee shall not make any new investments in shares of corporations. The auditing judge held that the codicil did not contain an "express restriction" on stock which qualified as a legal investment under the Act of 1949, but that it was merely a restriction against the investment in

stock which did not so qualify. The auditing judge was fortified in that conclusion by the approval of the investment by the only remainderman who was of age.

In Tower Estate, supra, the Woolston decision is cited and followed in the opinion by Judge Saylor for the court en banc. In the Tower case testator died in 1889 leaving an estate composed of stocks. His will directed the trustee to make certain investments without being confined to legals, to retain investments and to select new investments or securities, except capital stocks or corporation obligations not accompanied with reasonable securities. Judge Saylor's opinion states, page 450:

". . . the will discloses that testator wanted his trustee to collect and distribute dividends and to make his trust estate 'as productive as reasonably can be'. This indicates that he did not object to corporate stocks (his estate was in fact comprised of them at his death) and that he recognized that great income productivity might more likely result from such investments than from bonds or mortgages, both of which provide for a fixed return. . . .

"Furthermore, there is no word of prohibition on unsecured obligations and common stocks in the clause excusing the trustees from confining themselves to 'such investments as the law directs for the investment of trust funds'. It is only when that clause is passed and the reader goes on to the language creating an extension of the power to include the right to invest in so-called 'nonlegals' that he comes upon the language which constitutes a prohibition on certain investments in that category.

"From the above it is our conclusion that testator's intention was not to prohibit in any way the purchase by the trustees of 'investments and securities' authorized by law as legal for trust funds. There is in the

will no language amounting to 'an express restriction to the contrary' as required by the Act of 1949. . . ."

In Shannon Trust, supra, testatrix at the time of her death, owned stocks. Her will exonerated the trustee from being restricted to "legals" and authorized the trustee to invest in good interest-bearing securities other than stock of corporations, and to collect . . . rents, interest, dividends and income. The auditing judge, citing Tower Estate, again held as in the Woolston case that the restriction was not an "express restriction" against stock which qualifies under the legislative definition of "legal investment", but a restriction on stock which does not so qualify.

In the William H. Jenks adjudication, supra, Judge Hunter cited and followed my adjudication in the Woolston Trust. In the Jenks case, testator, who died in 1909, owned considerable stocks at the time of his death. He authorized his trustees to invest without being restricted to "legal securities", provided that they shall make no new investments in shares of corporations. Judge Hunter stated:

"There is an ambiguity in the language of the will in that there is doubt as to whether it is a special or general restriction.

"The Act of Assembly which states the presumed intent of a testator, to approve legal investments, calls for an 'express restriction' to the contrary.

"In my opinion the restriction in the will upon shares of corporations is not an 'express' one within the meaning of the Act, and to the extent that they are legal investments they may be purchased."

Clearly, none of the foregoing cases, nor the other cases which construe section 18 of the Investment Act, such as Smith Trust, 2 Fiduc. Rep. 393; Frazier Trust, 3 Fiduc. Rep. 399; Neafie Estate, 5 Fiduc. Rep. 291; Middleton Trust (No. 2), 8 D. & C. 2d 133, contain any "express restriction" such as in the instant trust in-

strument: "Trustee's power of investment shall in no event include the right to invest in stocks".

The instant trustee having thus committed a clear breach of trust should be made to suffer the loss occasioned. . . .

And now, October 16, 1957, the account is confirmed nisi.

*W. LeRoy McKinley*, for the exceptions.

*Irving N. Kieff*, guardian and trustee ad litem, contra.

## Opinion Sur Exceptions

SAYLOR, J., December 6, 1957.—By deed of trust executed in 1914 settlor set forth the investment powers of his trustee as follows:

"Upon any such sales being made the Trustee is hereby authorized and empowered to invest and reinvest the proceeds in bonds, mortgages and such other securities as to it shall seem proper, and to subscribe to any bonds or securities whether the same are or are not such investments as are by law defined or construed to be proper investments for trust funds, but in no event to be limited to the class of investments known as 'legal investments'; and upon any reorganization of any corporation whose bonds or securities are by this Instrument, or any Future Instrument, transferred to said Trustee, the said Trustee is hereby authorized in its absolute discretion, to join in any reorganization scheme and in furtherance of the same to accept stock of any existing corporations, or those hereafter to be created, but except to this extent, the power of investment of said Trustee shall not in any event include the right to invest in stocks; . . .".

On a partial accounting showing investment in common stock of the Philadelphia Electric Company, a "legal investment", the auditing judge surcharged the trustee for the loss sustained on the sale of the stock.

The trustee has filed exceptions to the adjudication. It places reliance on the powers and protection given

by the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821, as amended. It is admitted that the security purchased met the requirements of the act and that there was no failure to exercise due diligence and care in making the investment.

Section 18 of the act provides:

"The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or non-investment of principal . . . whenever any such provision shall conflict with this act, such provision shall control notwithstanding this act. In the absence, however, of an express restriction to the contrary in the trust instrument, the fiduciary may invest in any investment authorized by this act."

The sole issue to be decided is this: Did settlor set forth in the deed an "express restriction" which prevented the trustee from making an investment authorized by the act? Did the words, "the power of investment of said Trustee shall not in any event include the right to invest in stocks", constitute such an "express restriction"?

The auditing judge gave thorough consideration to settlor's phraseology, the act and the case law on the subject. He stated: "The phrase 'in no event' . . . is all-inclusive. It is in the singular, applicable to each event and is an 'express restriction' embracing not by implication, but by its simple meaning, any and all events including the event which by legislative act authorized fiduciaries to invest in certain instances in stocks", whether or not it was a legal investment when made.

With this conclusion we disagree. We find no language in the deed directed specifically to the provisions of the act and relating to the powers thereby given to fiduciaries.

Without such specific language, the requirements of the act respecting restrictions on its application are not complied with. In 1916, when the trust was established, there was no statutory authority to invest trust funds in corporate stocks. Consequently, settlor could not have had in mind creating a restriction on investment in stocks if they were legal investments. Not until nearly 35 years later did the legislature authorize stock investment. In doing so it required an "express restriction" if the privileges of the act were to be denied to a fiduciary.

Hence it is our opinion that when he established the trust in 1916, he failed to use language of such an express and restrictive nature as could, subsequent to the enactment of the Fiduciaries Investment Act, effect such a bar to the purchase of stock by the trustee as the law requires.

This and other courts of the Commonwealth have previously decided cases where the restrictive language was found to be inadequate to bar investment in so-called legal securities. There is no need to review these cases.

The issue is quite similar to that in Jeffries Estate, 293 of April term, 1922, decided this same day. The reasoning and authorities set forth in the opinion therein filed are here by reference incorporated in this opinion.

We find that settlor imposed upon his trustee no restrictions on the purchase of investments authorized by the Fiduciaries Investment Act, and we sustain the exception filed by the trustee.

As the issue here involved has not yet been determined by the Supreme Court of Pennsylvania, we instruct the guardian and trustee ad litem to file with that court a timely appeal from this decision.

Lefever and Shoyer, JJ., dissent.